# EXHIBIT 1

August 14, 2009
Special Meeting

Ok, well thank you very much for your patience. I would like to make a few comments before we start our commission discussion today and I think one is though I appreciate your interest and attendance today and we, the commission, have received a variety of written comments from, not only the Nampa Classical Academy, but also from members of the public prior to the meeting. At today's meeting, we will not take any additional verbal testimony that will be accepted at this time.

I think I would like to make a statement, that, on the advice of our counsel, the commission will take the position that the use of religious documents or text in a public school curriculum will be a violation of the Idaho Constitution. Accordingly, the commission wishes to advise the Nampa Classical Academy that if it proceeds to use religious text in class or in the classroom, the commission will be required to issue the school a notice of defect. Is there a motion at this time from any of the commissioners?

Mister Chairman, this is Commissioner Corkill, I'd like to make a motion to release the attorney client privilege documents given to us by our legal advisor.

Chair - ok

Corkill - ok

Female voice - I second that.

Chair - is there a second?

Female voice - yes after I already second that.

Chair - (cant understand what is said)

Is there any discussion about releasing the memorandum prepared by our counsel following today's meeting? Please say aye.

Several ayes.

Chair - All those opposed.

Ok, the motion carries.

I believe that concludes our discussion today. Chair leader taking a motion to adjourn.

Mr. Chairman, I make a motion to adjourn.

Chair - Is there a second?

Second

Chair - Any of those have any comments or discussion with respect to that motion?

All those in favor of the motion say aye.

Several ayes.

Chair - All opposed.

We are adjourned.  Thank you.  (Several good byes, thank you's, have a nice weekend)

# EXHIBIT 2

**MEMORANDUM**

**TO:**       BILL GOESLING, CHAIRMAN, PUBLIC CHARTER SCHOOL COMMISSION;
              COMMISSIONERS, PUBLIC CHARTER SCHOOL COMMISSION

**FROM:**    JENNIFER SWARTZ, DEPUTY ATTORNEY GENERAL

**SUBJECT:** USE OF RELIGIOUS TEXTS IN PUBLIC CHARTER SCHOOLS

**DATE:**    AUGUST 13, 2009

**CC:**       TAMARA BAYSINGER, PUBLIC CHARTER SCHOOL PROGRAM MANAGER

A question regarding the use of the Bible as a text in public school classrooms was raised during the Public Charter School Commission (Commission) meeting on July 22, 2009. In its pre-opening update presentation, Nampa Classical Academy (NCA), a Commission authorized school, discussed its intention to use the Bible and other religious texts in its curriculum. As discussed in the July 22 meeting, use of any religious texts within Idaho's classrooms, would likely violate of the Idaho State Constitution. For your reference, this issue is analyzed more fully below.

## IDAHO'S CONSTITUTION LIMITS USE OF RELIGIOUS TEXTS EXPRESSLY

Article IX, § 6 of the Idaho Constitution provides as follows:

> Religious test and teaching in schools prohibited. No religious test or qualification shall ever be required of any person as a condition of admission into any public education institution of the State, either as teacher or student; and no teacher or student of any such institution shall ever be required to attend or participate in any religious services whatever. <u>No sectarian or religious tenents or doctrines shall ever be taught in the public schools</u>, nor shall any distinction or classification of pupils be made on account of race or color. <u>No books, papers, tracts or documents of a political, sectarian or denominational character shall be used or introduced in any schools established under the provisions of this article</u>, nor shall any teacher or any district receive any of the public school moneys in which the schools have not been taught in accordance with the provision of the article.

(Emphasis added.)

NCA has explained that it does not intend to use any religious text for the purpose of teaching or promoting religion, but rather in the context of its cultural, historical, and literary significance. However, the express language of the above referenced provision of our state constitution does not provide an exception based upon *how* the text is intended to be used. Instead, § 6 prohibits *any* use of sectarian or denominational texts in a public school classroom. That this interpretation was indeed the intent of the drafters of the Idaho Constitution is expressly demonstrated in documentation of the State's Constitutional Convention. During the Idaho Constitutional Convention of 1889, an amendment to § 6 (then § 8) was proposed as follows: "Provided, that nothing herein contained shall be construed to forbid the reading of the Bible in public schools in any commonly received version, nor to enjoin its use." Hart, I.N. *Proceedings and Debates of the Constitutional Convention of Idaho 1889, Vol. 1 at pp. 684-702.* That amendment was defeated, and therefore not incorporated in the Idaho Constitution. *Id,* at 702.

## THE FEDERAL CONSTITUTION MAY PERMIT CERTAIN LIMITED USES BASED ON A VARIETY OF FACTORS

With respect to the United States Constitution, no doubt exists that under current U.S. Supreme court cases interpreting the First Amendment, the Bible cannot be used in public schools for any sectarian or religious purpose. *Abington School District v. Schempp,* 374 US 203, 224, 83 S. Ct. 1560, 1572 (1963). The First Amendment to the US Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const., amend. I. The prohibition against using the Bible for religious purposes in public schools holds true whether the use is by student choice, is student led, or whether student attendance is voluntary. *Id.* However, the *Schempp* case gave rise to oft-quoted language regarding the secular use of the Bible in an educational setting:

> [I]t might well be said that one's education is not complete without a study of comparative religion or the history of religion and its relationship to the advancement of civilization. It certainly may be said that the Bible is worthy of study for its literary and historic qualities. Nothing we have said here indicates that such study of the bible or of religion, when presented objectively as a part of a secular program of education, may not be effected consistently with First Amendment. But the exercises here did not fall into those categories. They are religious exercises, required by the States in violation of the command of the First Amendment that the government maintain strict neutrality, neither aiding nor opposing religion.

Complaint_Exhibit_2_page_006

*Schempp* 374 US at 225, 83 S. Ct. at 1573 (emphasis added). The difficulty under the First Amendment lies in the details – developing a course that is truly non-sectarian in nature, rather than one that is only an excuse to use the Bible to promote a religious purpose. Perhaps for that reason, case law upholding the use of the Bible as a text in a public school is rare if not nonexistent. A number of courts have made note of the *Schempp* comment regarding the literary and historic significant of the Bible. However, even while doing so, those same courts were finding that Bible-related or religious programs in public schools violated the first Amendment.[1]

## IDAHO'S MORE LIMITED CONSTITUTIONAL PROVISION IS CONSISTENT WITH THE ESTABLISHMENT CLAUSE

The Idaho Constitution and Idaho courts are consistently more restrictive with respect to the separation of church and state in connection with public schools. For example, in *Epeldi v. Engelking*, 94 Idaho 390, 395, 488 p. 2d 860, 865 (1971), the Idaho Supreme Court specifically held that providing public funds to parents of students attending parochial schools to aid the students' attendance at those schools violated Article IX, § 5[2] of the Idaho Constitution, despite the fact that the provision of such funds did <u>not</u> violate the first Amendment of the U.S. Constitution.

> This section in explicit terms prohibits any appropriation by the legislature or others (city, county, etc.) or payment from any public fund, anything in aid of any

---

[1] See, *Stone v. Graham*, 449 US 39, 101 S. Ct. 192 (1981)(posting of ten commandment in classroom found unconstitutional); *Illinois ex rel. McCollum v. Board of Education*, 333 US 203, 68 S. Ct. 461 (1940) (public school buildings cannot be used for religious purposes); *Berger v. Rensselaer Central School Corporation*, 982 F. 2d 1160 (7th Cir 1993) (distribution of Bibles in public schools unconstitutional); *Herdahl v. Pontotoc County School District*, 933 F. Supp 582 (ND Miss. 1996) (bible class violates First Amendment); *Hall v. Board of School Commissioners of Conecuh County*, 656 F. 2d 999 (DC Ala. 1981) (elective Bible class unconstitutional); *Mangold v. Albert Gallatin Area School District*, Payette County, Pa., 438 F. 2d 1194 (3rd Cir. 1971) (Bible reading and prayer in school unconstitutional); Doe v. Potter, 188 F. Supp. 2d 904 (ED Tenn. 2002) (teaching from the bible as religious truth unconstitutional); *Chandler v. James*, 985 F. Supp 1068 (MD Ala. 1997) (prayer and distribution of bibles in public schools unconstitutional); *Crockett v. Sorenson*, 568 F. Supp. 1422 (WD Va. 1983) (bible class in public school unconstitutional); *Vaughn v. Reed*, 313 F. Supp. 431 (WD. Va. 1983) (religious education program in elementary public schools unconstitutional); *Johns v. Allen*, 231 F. Supp. 852 (DC Del. 1964) (reading of Bible verses in public school unconstitutional).

[2] Sectarian appropriations prohibited – neither the legislature nor any county, city, town, township, school district, or other public corporation, shall ever make any appropriation, or pay from any public fund or moneys whatever, anything in aid of any church or sectarian or religious society, or for any sectarian or religious purpose, or to help support or sustain any school, academy, seminary, college, university or other literary or scientific institution, controlled by any church, sectarian or religious denomination whatsoever; nor shall any grant or donation of land, money, or other personal property ever be made by the State, or any such public corporation, to any church or for any sectarian or religious purpose.

Complaint_Exhibit_2_page_007

church or to help support or sustain any sectarian school, etc. <u>By the phraseology and diction of this provision it is our conclusion that the framers of our constitution intended to more positively enunciate the separation between church and state than did the framers of the United States Constitution.</u> Had that not been their intention there would have been no need for this particular provision, because under Idaho Const. art. 1, § 3, the exercise and enjoyment of religious faith was guaranteed (comparable to the free exercise of religion guaranteed by First Amendment of the United States Constitution) and it further provides no person could be required to attend religious services or support any particular religion, or pay tithes against his consent (comparable to the establishment clause of the First Amendment).

*Epeldi,* 94 Idaho at 395-96 (emphasis added).

In fact, the courts holding in *Epeldi* stands in direct contrast to that of the U.S. Supreme court on the same issue when it held that public tax dollars could be used to bus pupils to parochial schools in New Jersey under a First Amendment analysis. *Everson v. Board of Education of Ewing Township,* 330 US 1, 675 S. Ct. 504 (1947). Further, in holding that busing parochial students violated Article IX, § 5 of the Idaho Constitution, the Idaho Supreme court also rejected the argument that doing so violated the equal protection rights of the parochial students and their parents under the Fourteenth Amendment to the US Constitution of the Free Exercise of the First Amendment of the US Constitution. *Epeldi,* 94 Idaho at 396, 488 p. 2d at 866.

The Idaho Supreme Court has emphasized the more restrictive nature of the Idaho Constitution[3] as compared to the U.S. Constitution with respect to the separation of church and state in other cases as well.[4]

---

[3] Within published accounts of the discussion of this issue, NCA has publicly stated that federalism and preemption prohibit the Idaho's Constitution's express limitation on the use of religious texts. This analysis is incorrect. Generally, federalism prohibits a state from making permissive that which the Federal Constitution prohibits, but permits the state to regulate within the area provided it does not allow at the state level those things which are prohibited at the Federal level. A preemption analysis of Idaho's Constitutional provisions would likely be found to be well within the province of state regulation.

[4] See, *Doolittle v. Meridian Joint School District No. 2,* Ada County, 128 Idaho 805, 813, 919 p. 2d 334, 342, (1996) (The Idaho constitution has been held to provide greater restriction on the State's involvement in parochial activities than the Establishment clause of the First Amendment."); *Board of County Commissioners of Twin Falls County v. Idaho Health Facility Authority,* 96 Idaho 498, 509, 531, p. 2d 588, 599 (1975) ("The Idaho Constitution places much greater restriction upon the power of state government to aid activities undertaken by religious sects than does the First Amendment to the Constitution of the United States.")

Complaint_Exhibit_2_page_008

The rejection by the *Epeldi* court of the First Amendment standards established by the U.S. Supreme Court is significant given the fact that religious activities including use of the Bible in public school instruction have been struck down as unconstitutional under the First Amendment according to the standards articulated in federal cases such those cited above.[5] It is therefore difficult to imagine that NCA's proposed use of the Bible and other religious texts would survive the prescriptions of the First Amendment, let alone Article IX § 5 or Article IX § 6 of the Idaho Constitution.

## CONCLUSION

The Idaho Supreme Court has not specifically ruled on this issue. Article IX § 6 of the Idaho Constitution specifically states that "no books... papers, tracts or documents of a political, sectarian, or denominational character shall be used or introduced in any schools established under the provisions of this article...." Assuming that the Idaho Supreme Court follows the approach set forth in *Epeldi v. Engleking, supra*, and relies on the literal meaning of the language of the Idaho Constitution, it would conclude that the Bible cannot be used in a public school classroom. However, based on federal and state case law, as well as the strict language of the Idaho Constitution, it is likely that any effort to use the Bible as a text in an Idaho public school would be found unconstitutional under the Idaho constitution.

This memorandum is provided to assist you. It is an informal and unofficial response of the Office of the Attorney General based upon the research of the author.

---

[5] See, *Stone v. Graham, supra; Illinois ex rel. McCollum v. Board of Education, supra; Berger v. Rensselaer Central School Corporation, supra; Herdahl v. Pontotoc County School District, supra; Hall v. Board of School Commissioners of Conecuh County, supra; Mangold v. Albert Gallatin Area School District, supra; Doe v. Potter, supra Chandler v. James, supra; Crockett v. Sorenson, supra; Vaughn v. Reed, supra; Johns v. Allen, supra.*

Complaint_Exhibit_2_page_009

# EXHIBIT 3

Complaint_Exhibit_3_page_010



**ALLIANCE DEFENSE FUND**
*Defending Our First Liberty*

TO:      **Idaho Public Charter School Commission**

C/O:     **Tamara Baysinger, Charter Schools Program Manager**
           **Bill Goesling, Commission Chair**

FROM:  **David A. Cortman, Senior Legal Counsel**

RE:      **Nampa Classical Academy: Use of the Bible as an educational resource in Idaho public charter schools**

## INTRODUCTION

The Alliance Defense Fund ("ADF") has been retained by Nampa Classical Academy for the purpose of defending its right to determine the curriculum of its choosing, including utilizing the Bible as one educational resource among many. The Public Charter School Commission (hereinafter "Commission")[1] has requested Nampa's position regarding the legality of using religious texts as part of its curriculum. The Commission will also decide its stance on this issue at an upcoming special meeting.

Nampa Classical Academy is endeavoring to exercise its right to provide the best possible education for its students and has decided to include the Bible, along with dozens of other religious and secular writings, as resources in its school curriculum to enrich instruction of literature, history, and culture, among other topics. It is undeniable that the Bible is an invaluable primary source that sheds light on the history and culture of western civilization, literature, etc. and would promote insightful discussions in the classroom and critical thinking among students. Unfortunately, the Commission has informed Nampa Classical Academy that if

---

[1] Each reference to the Commission throughout this brief applies either to the Commission itself, or to the Commission acting through its legal counsel.

1000 HURRICANE SHOALS ROAD NE · BUILDING D, SUITE 600 · LAWRENCEVILLE, GA 30043 · PHONE 770-339-0774 FAX 770-339-6744 WEB WWW.TELLADF.ORG

it determines that the Bible may not be used as an educational resource and if it is not immediately removed from the school's curriculum, the school's charter may either be denied or revoked if already approved.

The Commission will be basing its decision on Article IX, section 6 of Idaho's Constitution, which reads in full:

> No religious test or qualification shall ever be required of any person as a condition of admission into any public educational institution of the state, either as teacher or student; and no teacher or student of any such institution shall ever be required to attend or participate in any religious service whatever. No sectarian or religious tenets or doctrine shall ever be taught in the public schools, nor shall any distinction or classification of pupils be made on account of race or color. No books, papers, tracts or documents of a political, sectarian or denominational character shall be used or introduced in any schools established under the provisions of this article, not shall any teacher or any district receive any of the public school moneys in which the schools have not been taught in accordance with the provisions of this article.

Idaho Const. art. IX, § 6.

Will the Commission read this provision in a manner that requires it to begin a search and destroy mission seeking to censor all curriculum resources of every public school in the state that *the Commission believes* may be political or sectarian? And what would that include? The Mayflower Compact? The Federalist Papers? The Declaration of Independence? Dr. Martin Luther King, Jr.'s "I Have a Dream" speech or his "Letter From Birmingham Jail"? It can easily be concluded that these are either political, sectarian, or both.[2]

---

[2] The first and most obvious problem is who gets to decide what is political or sectarian? Further, a quick review of the State's curriculum content reveals that many political and religious subjects are discussed and many of these documents are indeed part of the curriculum at public schools, as they should be. *See e.g.* www.sde.idaho.gov/site/content_standards/ss_standards.htm (visited last on August 6, 2009) (includes discussions concerning religious and political motives of immigrants, how religion has been an important influence in American history, and descriptions of origins, beliefs and the spread of religions, including Judaism and Christianity, etc); *see also* Idaho State Dep't of Education, Idaho Basic Education Data System, 16 (includes Biblical Literature in grades 9-12). The problem, however, as raised herein, is attempting to draw an artificial (and unconstitutional) line between what is considered political or sectarian and what is not. The current standards would arguably violate the Commission's proposed interpretation of article IX, section 6.

Complaint_Exhibit_3_page_012

Contrary to what has been suggested, this provision does not forbid the Bible from being part of a public school's curriculum, as evidenced by the intent of the framers of Idaho's Constitution. Furthermore, to hold that the Bible may not be used as part of Nampa Classical Academy's curriculum under these circumstances offends the United States Constitution.

## ARGUMENT

### I. THE ORIGINAL DRAFTERS MADE CLEAR THAT ARTICLE IX, SECTION 6 DOES NOT PRECLUDE USE OF THE BIBLE IN PUBLIC SCHOOLS.

The proceedings and debates of the Constitutional Convention of Idaho show that this state's founding fathers did not intend article IX, section 6 to preclude use of the Bible in public school education. To the contrary, the framers of Idaho's Constitution sought assurances that the right of public schools to use the Bible as a teaching tool would be protected. The Commission should not reinterpret this provision to contravene the original intent of Idaho's founders.

During Idaho's Constitutional Convention, the framers specifically addressed the issue of whether article IX, section 6 may be construed to keep the Bible completely out of public schools and they passionately argued against such a result. Reacting to a superintendent of instruction who had declared the Bible sectarian and thus banned from public schools, the delegates engaged in a lengthy debate as to whether this provision allowed the Bible's use in public schools. Proceedings and Debates of the Constitutional Convention of Idaho, 1889 684-701 (I. W. Hart ed., vol. 1, Caxton Printers, Ltd. 1912).

The result of this debate was a clear message from the majority of founding fathers of this state that the Bible can be used in public schools without offending the state's constitution. There is much evidence to support this conclusion. For example, Mr. Poe of Nez Perce County proclaimed that "the Bible contains sweeter poetry, finer strains of eloquence and purer morals that can be found in any other book." Id. at 688. He went on to say that it would be wrong to

3

"deprive the school of the right to have the Book of all books read to its pupils if the directors and parents of that school desire it. To say that the Bible shall be excluded from the public schools, I would consider an act which would do more than all other acts to condemn the work of this convention." *Id*. at 689. Mr. Claggett of Shoshone County reiterated this sentiment when he declared that "to exclude in any way, shape or form, to exclude the children of the state from access to this great reservoir of moral principles and practical maxims of daily duty is doing an injustice to them and doing an injustice to the state at large." *Id*. at 694. Many framers echoed this sentiment.

### A.   The True Intent of the Framers of Idaho's Constitution was to Exclude Sectarian Tenets and they did not Consider the Bible to be a Sectarian Book.

This provision was never intended to push all religious texts out of Idaho's public schools regardless of the intended use, but to serve an entirely different motive; to stop particular denominations or sects from introducing their tenets in Idaho's public schools. The ban against "sectarian or religious tenets or doctrines" and books of "sectarian or denominational character," Idaho Const. art. IX, § 6, was intended only to keep "sects" from preaching in the public schools and the Bible was not considered a sectarian book by a majority of Idaho's founders. This sentiment was expressed by many of the framers. Mr. Poe commented that the Bible is not itself sectarian, but the book upon which "the different creeds are founded which are called sectarian." Hart at 688. This understanding is in line with the current definition of sectarian as being "[o]f or related to a *particular* religious sect." Black's Law Dictionary (8th ed. 2004) (emphasis added). Clearly, the Bible, is not exclusive to any one *particular* religious sect and thus, not sectarian.

This point is even more compelling considering the intended use of the Bible at Nampa Classical Academy. There is a distinct difference between reading the Bible devotionally and

studying it as a historical or literary text. The school seeks to use the Bible along with other primary sources to improve literary, historical, and cultural education and not to promote religious, sectarian, or denominational tenets or doctrine. This use is entirely in line with the intentions of the framers of Idaho's Constitution and to disallow it would run contrary to their intent.[3] Mr. Mayhew of Shoshone County summed up the overall sentiment of the framers when he said "it is not the reading of the Bible in the school that creates a feeling of sectarianism. I do not believe in the theory that the Bible teaches sectarianism. . . . I, for one, . . . desire that the Bible may be read in our schools, but that no sect shall teach in the schools any sectarian doctrine." *Id.* at 698. The record shows that this was the understanding of most of Idaho's founders, as evidenced by the votes on two proposed amendments.

## B. The Debate Surrounding the First Amendment to This Section Which was Presented Showed the Framers' Understanding that the Bible's Use Would be Allowed in Public Schools.

The first proposed amendment was offered by Mr. Clark to clarify that the Bible may indeed be used and stated that article IX, section 6 shall not "be construed to forbid the reading of the Bible in public schools in any commonly received version, nor enjoin its use." *Id.* at 684. This amendment failed by the narrowest of margins (23 to 25), *id.* at 702, but tellingly, two of the "nay" voters, Mr. Beatty of Alturas County and Mr. Wilson of Ada County, both opined that the amendment was not needed because the provision as it stood already allowed the Bible to be read in public schools. This proves that at a minimum, a majority of the founders believed that it was permissible to use the Bible in public schools even with the presence of article IX, section 6.

Mr. Beatty stated his position by saying that "the section as it now reads does not preclude the use of the Bible in the schools" and "I believe as it reads that the Bible can be used

---

[3] To disallow the use of the Bible under these facts would also violate the United States Constitution (discussed *infra*).

Complaint_Exhibit_3_page_015

and no objection made to it." *Id.* at 689-91. Mr. Beatty again restated his position that "[t]he section, as I remarked a while ago, does allow the use of the Bible to be read in the schools where the people desire it, and the section, I think as drafted, does exclude all sectarian books." *Id.* at 691.

Likewise, Mr. Wilson noted that "if the Bible is not a sectarian book, then the Bible can be read and will not be prohibited. . . . I do not myself believe it is a sectarian book. The supreme courts of a good many states have decided it is not a sectarian book. . . . therefore the reading of it would not be prohibited" by the provision "as it stood originally." *Id.* at 697. These two "swing" votes, added to the 23 founders that voted for this amendment that explicitly stated that the Bible can be used, show that a majority of the framers approved of the Bible's use in public schools.[4]

In addition, the debate on the second amendment, which was adopted and is currently part of article IX, section 6, also proves that the framers intended the Bible to be a permissible resource in public schools.

### C. The Debate Surrounding the Approval of The Second Amendment at Issue Also Showed the Framers' Understanding that the Bible's Use Would be Allowed in Public Schools.

During the discussions concerning the permissibility of using the Bible in public school instruction, Mr. Hasbrouck of Washington County offered another amendment to article IX,

---

[4]    J.W. Reid reintroduced the Clark amendment at the convention itself. Proceedings and Debates of the Constitutional Convention of Idaho 1889, 1438 (I. W. Hart ed., vol. II, Caxton Printers, Ltd. 1912). This amendment was defeated by a vote of 25 – 18. *Id.* at 1443. Because there is much less testimony than when voted on in committee, there is no sound basis to rebut the conclusion that a majority of the founders believed the Bible could be used in public schools. This is so because many of the reasons for the "nay" votes, as seen in both debates, are unknown. What we do know, however, is that the original debates provide ample evidence that there was a majority of the founders that either voted for the Clark amendment, which explicitly stated that the Bible could be used in public schools, or only voted "nay" because they thought the language without the amendment already allowed the Bible's use. *See supra.* Finally, as an important side note, there is a vast difference, both politically and legally, between reading the Bible devotionally and utilizing it as an educational resource. After reviewing both the committee debates and the convention debates, there is much more evidence that the founders believed that the Bible was permitted to be read in the public schools, even considering the final language that was adopted.

Complaint_Exhibit_3_page_016

section 6 that read, "No books, papers, tracts, or documents of a political, sectarian or denominational character, shall be used or introduced in any public schools established under the provision of this article . . ." *Id*. at 701. Prior to voting on Mr. Hasbrouck's amendment, the delegates made specific inquiry as to whether the amendment would allow the superintendent of public instruction "to exclude the Bible on the ground that it was sectarian .... under any ordinary construction." *Id*. The delegates only approved the amendment after Mr. Hasbrouck replied, "I don't think it would." *Id*.[5]

Clearly, the framers approved this amendment with the understanding that the provision would not exclude the use of the Bible in Idaho's public schools. As evidenced by their proclamations and their votes, the framers never intended the language of this provision to be interpreted as a ban on the Bible in public schools, but sought assurances that this right would be protected under Idaho's Constitution.

## II.   NAMPA CLASSICAL ACADEMY HAS A STATUTORY RIGHT TO CHOOSE ITS OWN CURRICULUM.

The majority of the founders believed that public school districts had a right to use the Bible in education and this provision did not infringe upon this right. Further, as discussed *supra*, there is a vast difference between exposure to sectarian devotionals and instruction from the Bible as a literary or historical resource. Parents and community members who believe that this form of classical education is superior and will benefit their children should not be robbed of the opportunity to utilize this option, especially when the framers of Idaho's Constitution recognized a right for districts to use such resources as part of their curriculum.

---

[5] The importance of this question-- and the response thereto--should not be underestimated considering that the context of this entire debate was framed by, and somewhat in response to, the superintendent's decision to ban the Bible in public schools, and considering that the question, and more importantly, the answer given, would inform the delegates whether supporting this amendment would permit or preclude the Bible's use. It is safe to say that the answer to this question directly influenced the votes that were then cast. It is thus an important consideration in reaching any conclusion of how the final vote affected the use of the Bible in public schools.

7

Throughout their debates, the framers held that the Bible was allowed to be read in public schools if the people desired it. *Id.* at 686, 688, 690-91. Mr. Maxey of Ada County summed up this sentiment best, stating "[i]f people want the Bible read, let them read it; if they do not want it read, let them keep it out." *Id.* at 688. Here, the people want the Bible included and the Commission has no authority to repress this right. This holds all the more true under these facts because charter schools are not subject to the same restrictions applied to other public schools, including the rules governing curriculum. Idaho's Code states that charter schools must comply with the same financial reporting requirements of other public schools, but "[e]ach public charter school is otherwise exempt from rules governing school districts which have been promulgated by the state board of education with the exception of" a short list of rules that are not applicable in the instant case. Idaho Code § 33-5210 (3), (4) (West 2009). The Commission simply does not have the authority to prevent the charter school from exercising its right to use the Bible to enrich literary, historical, and cultural education. This is a right that the founders of this state intended to be protected and the Commission has no right under Idaho law to suppress it.[6] Furthermore, to do so would offend the United States Constitution.

## III. THE UNITED STATES SUPREME COURT HAS CONSISTENTLY HELD THAT IT IS APPROPRIATE FOR PUBLIC SCHOOLS TO UTILIZE THE BIBLE FOR ITS LITERARY OR HISTORICAL VALUE.

The United States Constitution has been consistently interpreted by the Supreme Court and the Ninth Circuit to permit the objective study of the Bible for its literary or historical value. *Stone v. Graham*, 449 U.S. 39, 42 (1980) ("[T]he Bible may constitutionally be used in an appropriate study of history, civilization, ethics, comparative religion, or the like."); *School Dist. of Abington Township v. Schempp*, 374 U.S. 203, 225 (1963) ("[I]t might well be said that one's

---

[6] The Commission may attempt to rely on Idaho Code section 33-5209(2)(f) that permits charter revocation upon showing that the charter school "violated any provision of law." But such reliance is misplaced since it would be based on a faulty and overly restrictive reading of the Idaho Constitution, as discussed herein.

8

Complaint_Exhibit_3_page_018

education is not complete without a study of comparative religion or the history of religion and its relationship to the advancement of civilization.")[7]; *Grove v. Mead School Dist.*, 753 F.2d. 1528, 1534 (9th Cir. 1985) (recognizing that the literary or historic study of the Bible is not a prohibited religious activity). In addition, the Eighth Circuit held in *Florey* that "when the primary purpose served by a given school activity is secular, that activity is not made unconstitutional by the inclusion of some religious content" and therefore, to not include such content "would give students a truncated view of our culture." *Florey v. Sioux Falls Sch. Dist.*, 619 F.2d 1311, 1316 (8th Cir. 1980). The *Florey* court went further by holding that "music, art, literature, and drama" with a cultural and religious heritage may be included in a school's curriculum in an objective manner. *Id.* at 1317. This is the precise manner in which Nampa Classical Academy wishes to use the Bible in its curriculum.

## A. Idaho's "Stricter" Establishment Clause does not Prohibit the use of the Bible in Public Schools.

It has been held that the Constitution of the State of Idaho was intended to "more positively enunciate the separation between church and state" than the United States Constitution, *Epeldi v. Engelking*, 488 P.2d 860, 865 (Idaho 1971) (ruling on article 9, section 5), *Board of County Comm'rs v. Idaho Health Facilities Auth.*, 531 P.2d 588, 599 (Idaho 1975) (same). Section 6 prohibits "sectarian or religious tenets or doctrines" from being taught and prohibits the introduction or use of "books, papers, tracts or documents of a political, sectarian, or denominational character" in the public schools. Idaho Const. art. IX, § 6. If this provision is interpreted to preclude all use of the Bible for its historic or literary value then Idaho's constitution not only far surpasses the requirements of the Establishment Clause of the United States Constitution, it may also violate several of its provisions.

---

[7] The *Schempp* case also demonstrates the distinction between reading the Bible as a religious exercise, and reading the Bible as part of a secular study. Such is the current distinction.

Complaint_Exhibit_3_page_019

Simply because the Idaho Constitution may more clearly enunciate such separation does not answer the question of whether it is appropriate to use the Bible as an instructional resource in public schools. In fact, they are two distinct inquiries. Even with a "stricter" separation, the use of the Bible remains permissible. Detractors conflate Idaho's Establishment Clause standard and the issue of the Bible's use in public schools in a simplistic attempt to keep the Bible out of public school curriculum. As discussed *supra*, the majority of the framers voted to make sure that when drafting article IX, section 6 of Idaho's Constitution it did not preclude the use of the Bible in public schools. In addition to the permissibility of using the Bible as an instructional resource under Idaho's Constitution, to hold that this practice is impermissible would offend the United States Constitution.

## B. The Supremacy Clause Prevents Censorship of the Bible as an Instructional Resource Because to do so Would Violate Multiple Constitutional Rights.

Simply concluding that the Idaho Constitution contains more stringent establishment provisions than the U.S. Constitution, and concluding that such provisions prohibit any educational use of the Bible, does not foreclose the question of the constitutional validity of those provisions. Under the Supremacy Clause, state constitutional or statutory provisions must yield to the higher authority of federal constitutional mandates. When state law not only restricts conduct that is permitted under the federal constitution, but further violates a constitutional mandate, the enforcement of that law is void under the Supremacy Clause.

> If the act which the state attorney general seeks to enforce be a violation of the Federal Constitution, the officer, in proceeding under such enactment, comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct.

*Ex Parte Young*, 209 U.S. 123, 159-60 (1908). The Ninth Circuit has acknowledged this effect of the Supremacy Clause with respect to state laws that conflict with federal constitutional

Complaint_Exhibit_3_page_020

guarantees, saying that "when federal law mandates rather than simply permits certain activity . . . the Supremacy Clause takes over and prohibits the states from using their own constitution to block the federal law." *Hoppock v. Twin Falls School District*, 772 F.Supp. 1160, 1164 (9th Cir. 1991). The Supreme Court of Idaho concurs. *See e.g. Doolittle v. Meridian Joint School Dist.*, 919 P.2d 334, 342 (Idaho 1996) ("Where there is a conflict between a federal law and our state constitution, federal statutes that are made in pursuance of the United States Constitution will prevail over our state constitution") (citations and internal quotations omitted).

In addition to Nampa's position that the Idaho Constitution does not even bar the introduction of the Bible's use as a primary historical and literary source, the cramped reading that is being proposed by the Commission would violate a host of federal constitutional provisions. Primarily, such a restrictive reading of the Idaho Constitution would violate the mandates of the Establishment Clause of the First Amendment applicable to the states through the Fourteenth Amendment, which prohibits the government from engaging in hostility toward religion. This constitutional mandate is well established under ample Supreme Court precedent. *See Lynch v. Donnelly*, 465 U.S. 668, 673 (1984) ("[The Constitution] affirmatively mandates accommodation, not merely tolerance of all religions, and *forbids* hostility toward any") (emphasis added); *McCollum v. Board of Education*, 333 U.S. 203, 211-12 (1948) ("A manifestation of such hostility [to religion] would be at war with our national tradition as embodied in the First Amendment's guaranty of the free exercise of religion."); *Rosenberger v. Rectors and Visitors of the Univ. of Va.*, 515 U.S. 819, 845-46 (1995) (saying that hostility could undermine the neutrality required by the First Amendment). An interpretation of the Idaho Constitution to prohibit the objective use of the Bible for its literary and historical value would be the kind of hostile targeting of religion for suppression and exclusion prohibited by the First

11

Amendment. This violation would render this state constitutional provision unenforceable under the Supremacy Clause and would subject its enforcing officers to liability for federal constitutional violations.

Enforcing article IX, section 6 against Nampa Classical Academy and their plan to incorporate the Bible as a primary literary and historical source would also violate the Equal Protection Clause of the Fourteenth Amendment. A reading of article IX, section 6, wherein the Bible is excluded as a sectarian document, would also require that the prohibition on the use or introduction of tracts, documents, or papers of a political character be as strictly enforced. It is hardly imaginable that Idaho wants to exclude all political papers, books, and documents from use or introduction in the schools. How could a school ever teach its students about government and the political process without introducing documents of a political character? Furthermore, many of the greatest documents from American History were written from a particular political or religious point of view and are replete with references to and quotations from the Bible. Should these too be excluded? Without engaging in a devastating censorship campaign, the state cannot enforce this provision consistently with reference to all documents of a political and sectarian character. To target those who would use the Bible for exclusion, when there are innumerable other documents regularly used in the schools that equally violate this expansive reading of article IX, section 6, would violate the Constitution's Equal Protection guarantee that those similarly situated be treated alike. *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). Enforcing article IX, section 6 against Nampa Classical Academy when all other public schools are equally in violation of this provision (as restrictively interpreted) would also give rise to an additional Equal Protection claim of selective enforcement.

Complaint_Exhibit_3_page_022

Such an overly restrictive reading also raises Due Process issues of vagueness. "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. . . . [W]e insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly. . . . Where a vague [law] abuts upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of those freedoms." *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972). What exactly is a sectarian document? What is a document of a political character? The Gettysburg Address? Washington's Inaugural Address? Patrick Henry's famous "Give me Liberty or Give me Death" speech? Can students be taught our republican form of government along with the differences between the parties? How would a person of ordinary intelligence know what is permitted to be taught? Is it an "I know it when I see it" test? In the midst of all of these questions, one thing is clear: the reading proposed by the Commission will not bring clarity to this issue but will only escalate the debate exponentially.

To adopt an overly stringent reading of article IX, section 6 would also raise a host of other constitutional concerns. Such a reading would conflict with the widely recognized broad discretion of the individual school board to manage their own affairs and to craft and apply a curriculum based on their understanding of the local community. *See* Idaho Code § 33-5210(4) (giving charter schools the right to create their own curriculum by exempting them from applicable rules governing school districts); *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 272 (1988) (saying that school boards have broad discretion in managing their own affairs); *Board of Educ., Island Trees Union Free Sch. Dist. v. Pico*, 457 U.S. 853, 864 (1982) (plurality opinion) (supporting the proposition that local school boards may establish and apply curriculum that is representative of community values).

13

Complaint_Exhibit_3_page_023

A restrictive application of article IX, section 6 would also interfere with Nampa's teachers' academic freedom "to exercise professional judgment in selecting topics and materials for use in the course of the educational process." *Fowler v. Board of Education*, 819 F.2d 657, 661 (6th Cir. 1987). Additionally, the Supreme Court has held that the states are not free to impose conditions on the rights of teachers that are based upon violations of constitutional guarantees, like those found in the Establishment Clause. *Epperson v. Arkansas*, 393 U.S. 97, 107 (1968).

Finally, prohibiting the use of the Bible as a primary literary or historical text on the grounds that the state constitution forbids it would interfere with the students' right to receive information of educational value. *See Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1028 (9th Cir. 1998) (recognizing the student's rights to receive information that the school board has deemed to be of legitimate educational value). This right to receive information has been recognized by the Supreme Court which found a violation of the First Amendment when a school removed books from the library in a content based manner. *Pico*, 457 U.S. at 866.

This restrictive reading would likewise create unconstitutional viewpoint discrimination. *See e.g. Good News Club v. Milford Central School*, 533 U.S. 98, 112 ("speech discussing otherwise permissible subjects cannot be excluded . . . on the ground that the subject is discussed from a religious viewpoint"). Students have a right to address assignments from a religious or Biblical perspective, including using both religious and secular sources. Would the Commission's reading of this provision prohibit students from using the Bible as a resource for completing their work (*e.g.,* a paper on comparative religion, a biography of President Washington or Lincoln, a report on the founders of our country, or the founding of Idaho and the contribution of missionaries), even when it was relevant and appropriate to the assignment?

14

To eliminate otherwise permissible books such as the Bible from use in an educational context in a content or viewpoint based manner would open the responsible state parties up to extensive, costly, and public litigation.

## CONCLUSION

The Commission's proposal to deny Nampa Classical Academy's right to use the Bible in its curriculum cannot pass muster under either the Constitution of Idaho or the United States Constitution. The framers of Idaho's Constitution never intended for the Bible to be banned from public schools, especially not under the circumstances in the instant case. The Bible is not a sectarian book, as prohibited under article IX, section 6, and it is not being used here to promote sectarian tenets. In addition, to ignore the intent of the framers and hold that the Bible can never be used in Idaho public schools would offend the United States Constitution. Such a result is impermissible and Nampa Classical Academy must be allowed to exercise its right to use the Bible, along with many other documents, as resources in its school curriculum.

Complaint_Exhibit_3_page_025



August 10, 2009

Tamara Baysinger
Charter School Program Manager
Idaho Public Charter School Commission
650 West State Street
Room 307
Boise, Idaho 83702

Re: Nampa Classical Academy

Dear Ms. Baysinger,

Nampa Classical Academy has retained the Alliance Defense Fund to represent its interests regarding use of the Bible as an educational resource, among many others, as part of its curriculum. In response to your request, please find enclosed a legal memorandum addressing this matter. Please forward any decisions regarding this matter to my office.

We want to thank the Commission in advance for its consideration of this matter. If you have any questions, please do not hesitate to contact me at (770) 339-0774.

Sincerely,

David A. Cortman
Senior Legal Counsel

cc: Nampa Classical Academy

Complaint_Exhibit_3_page_026