David A. Cortman*
dcortman@telladf.org
GSB # 188810
Alliance Defense Fund
1000 Hurricane Shoals Road
Bldg. D, Suite 600
Lawrenceville, GA 30043
(770) 339-0774 telephone
(770) 339-6744 facsimile
Counsel for Plaintiffs

Gary S. McCaleb*
gmccaleb@telladf.org
ASB # 018848
Alliance Defense Fund
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020 telephone
(480) 444-0028 facsimile
Counsel for Plaintiffs

Bruce D. Skaug
bruce@legaleaglesnw.com
Associated Local Counsel
ISB # 3904
Goicoechea Law Office – Nampa LLP
1226 E. Karcher Road
Nampa, Idaho 83687
(208) 466-0030 telephone
(208) 466-8903 facsimile
Counsel for Plaintiffs
* Admitted Pro Hac Vice

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| Nampa Classical Academy; Isaac Moffett; | ) | |
| M.K., a minor, by and through her next friend; | ) | |
| Maria Kosmann, individually and as next friend | ) | Case No. 1:09-cv-00427-EJL |
| of M.K, a minor, | ) | |
| | ) | |
| Plaintiffs | ) | Plaintiffs' Amended Verified |
| | ) | Complaint |

1

vs.                                              )
                                                 )
William Goesling, individually and in his official  )
capacity as Chairman of the Idaho Public Charter  )
School Commission ("Commission"); Brad           )
Corkill, Gayann DeMordaunt, Gayle O'Donahue,     )
Alan Reed, and Esther Van Wart, all individually  )
and in their official capacities as members of the  )
Commission; Dr. Michael Rush, individually and   )
in his official capacity as Executive Director of the  )
State Board of Education ("Board"); Paul Agidius,  )
Board President; Richard Westerberg, Board Vice  )
President; Kenneth Edmunds, Board Secretary;     )
Emma Atchley, Rod Lewis, Don Soltman, Milford    )
Terrell, all individually and in their official     )
capacities as members of the Board; Tom Luna,    )
individually and in his official capacities as     )
Superintendent of Public Instruction, as Executive  )
Secretary of the Board, and as Chief Executive    )
Officer of the State Department of Education;     )
and Lawrence Wasden, in his official capacity as  )
the Attorney General of the State of Idaho,      )
                                                 )
         Defendants                              )
_____)

## I.    INTRODUCTION

1.    The Bible is arguably the most influential book that has ever been written.  Along with being

      the best-selling book of all time, its influence in music, art, and literature is unparalleled.

      References to its stories, lessons and history can be found in innumerable books, movies,

      plays, artwork, and even in our every day language.  It was one of the first resources ever

      used in this country's public schools to teach students to read.

2.    Defendants have decided that the Bible, and every other "religious document and text," are

      now banned books in every public school throughout the State of Idaho.

3.    The vast amount of legitimate educational material that Defendants are banning is simply

astounding.

4.      Nampa Classical Academy (the "Academy"), through its founders, has spent the last six

years developing a charter school that employs a classical teaching curriculum.  Defendants

have known of the school's intended use of primary texts, both secular and religious.

5.      Approximately one week before the Academy was originally scheduled to open its doors to

over 500 students, and nearly one year after approving its charter, the Idaho Public Charter

School Commission ("Commission") ruled that it was illegal to use any "religious documents

or text in a public school curriculum" or to "use religious text in class or in the classroom."

("Order")   *See* Exhibit ("Ex.") 1.

6.      Defendants initially targeted the Bible, but later broadened their prohibition to include all

religious texts.  Defendant Commission issued the final Order on August 14th, based largely

on an opinion issued by the Attorney General's office, holding that if Plaintiffs were to

utilize any religious text, even objectively as a resource to teach history, literature, art, music,

or other subject, the Commission would issue a notice of defect for the purpose of revoking

the Academy's charter. *See* Ex. 2 (Attorney General's opinion letter).

7.      This Order was issued despite the fact that the State Department of Education has included

a Bible as literature course among its list of courses in public education curricula, and despite

the fact that public schools across the State utilize the Bible and other religious texts in their

curriculum.

8.      Out of the hundreds of public schools throughout the State of Idaho, Defendants have singled

out Plaintiffs for this censorship.

9.      Defendants' newly crafted Policy violates Plaintiffs' rights.

## II.     JURISDICTION AND VENUE

10.   This action arises under the United States Constitution, specifically the First and Fourteenth Amendments, and under federal law, particularly 28 U.S.C. § 2201 and 42 U.S.C. §§ 1983 and 1988.

11.   This Court has jurisdiction over Plaintiffs' federal claims by operation of 28 U.S.C. §§ 1331 and 1343, and over the supplemental state law claim under §1367.

12.   This Court is vested with authority to grant Plaintiffs' requested declaratory relief by operation of 28 U.S.C. §§ 2201 and 2202 and under Federal Rule of Civil Procedure 57.

13.   This Court is authorized to grant Plaintiffs' requested injunctive relief under 42 U.S.C. § 1983 and Rule 65 of the Federal Rules of Civil Procedure.

14.   This Court can award Plaintiffs' nominal damages (against the individual capacity Defendants only) under 28 U.S.C. § 1343.

15.   This Court can award Plaintiffs' attorneys' fees and costs under 42 U.S.C. § 1988.

16.   Venue is proper under 28 U.S.C. § 1391 in the District of Idaho because the claims arose there, the parties reside there, and the cause has the greatest nexus there.

## III.    IDENTIFICATION OF PLAINTIFFS

17.   Plaintiff Nampa Classical Academy is incorporated as a not-for-profit organization under the laws of the State of Idaho and may sue and be sued.

18.   Plaintiff Academy (through its founders and board members) has structured its entire curriculum in a classical, liberal arts format, and focuses its study not on textbooks but rather on primary sources as a method of educating its students.

19.   Such primary sources are both secular and religious, the majority being secular.

20. Plaintiffs believe that many students are receiving an inadequate education and therefore Plaintiffs are utilizing a historical, classical teaching model.

21. For example, unlike the Academy, many schools do not even require reading primary sources (e.g., the Constitution of the United States or of Idaho) when studying a particular document, but rather rely on secondary sources, such as textbooks.

22. By contrast, the Academy's historical model features a traditional, value-centered curriculum stressing subject mastery and critical analysis. Rather than reading from secondary or even tertiary sources, such as textbooks, as do traditional public schools, the Academy utilizes primary sources in their stead, including both secular and religious documents and texts.

23. Plaintiff Isaac Moffett is a founder of the Academy, is an ad hoc board member, and is currently a teacher.

24. Mr. Moffett has had the primary role of drafting the curriculum.

25. Teachers are permitted to utilize a variety of sources for teaching their respective courses, including those that are religious documents or text.

26. Mr. Moffett teaches several classes, including 7th and 8th grade geography and 11th grade history, in which he incorporates references to the religions of both the time period and the particular region being studied, and does so by utilizing the applicable religious documents or text.

27. Mr. Moffett and all other teachers cannot adequately teach students about history and geography while they are required by Defendants to censor the religious documents and texts of these cultures.

28. These religious documents serve to inform the students about the history of each culture in

many ways, including their choice of food, shelter, architecture, customs, habits, laws, beliefs, etc.

29. The Order specifically and directly prohibits Mr. Moffett and all other teachers from including any religious documents or text in the school curriculum or in the class or in the classroom.

30. Defendants' censorship of all religious documents prohibits Mr. Moffett and all other teachers from teaching from a vast array of educationally valuable resources that happen to be religious.

31. Plaintiff Mrs. Kosmann is the mother and legal guardian of Plaintiff M. K. and brings this action both individually as a school employee and parent, and as next friend of M.K..

32. Mrs. Kosmann has chosen to work at and send her children to the Academy precisely because it has decided to use the time-tested classical curriculum, which includes many primary sources, including those that are religious.

33. Mrs. Kosmann, as both a parent and school employee, believes that the quality of her children's education will suffer without the religious texts.

34. Mrs. Kosmann teaches certain classes and also is a substitute teacher.  In one of the classes, she taught/teaches Egyptian history, which includes the religious ceremonies and beliefs of the Egyptians.

35. The Order prevents Mrs. Kosmann from using any religious documents or text to teach this facet of Egyptian history.

36. Defendants' Order has harmed Mrs. Kosmann in several ways, including prohibiting her from using any religious documents or text when teaching any of the classes, including when

she is teaching about Egyptian history.

37.     As a result of Defendants' Order, Mrs. Kosmann also faces the uncertainty of whether the school will remain viable, whether she will lose her job, will have her six children who attend the Academy displaced, or will have lost the tremendous investment of time and money that she has already expended in assisting the Academy and her children in preparation for the school year.

38.     Plaintiff M.K. is a 9th grade student currently scheduled to begin school on September 8th.

39.     M.K. desires to learn about U.S. history, geography, civics, art, music and other courses and to study the applicable secular and religious documents in such courses.

40.     M.K. desires to learn about the various religions historically found in western civilization, to read primary religious and secular documents, and to include these documents in her class work.

41.     M.K. also desires to better understand the many religious and Biblical allusions and teachings found in many secular texts that she will be reading, such as Of Mice and Men, The Hunchback of Notre Dame, and The Adventures of Huckleberry Finn, to name a few.

42.     She will only be able to obtain this knowledge by studying the primary religious sources that are quoted or alluded to in these works, but is prohibited from doing so by Defendants' Order.

43.     One of the main reasons that M.K. and her parents decided that she would attend the Academy was so that she would be able receive such classical instruction, including learning directly from the religious and secular primary sources that are integrated into the curriculum.

44.     Defendants' Order which forces Plaintiffs to censor the use of all religious documents and

text directly affects M..K.'s right to receive information that has legitimate educational value.

45.   Defendants' Order prohibiting all religious documents and text from the curriculum and the classroom also directly prohibits M.K. from utilizing religious documents such as the Bible in class when she is completing course work, research papers or projects.

46.   As Plaintiffs continue to utilize religious documents they remain in violation of the Commission's Order.

47.   The school, the teachers, and the students, including all Plaintiffs, are unlawfully being chilled in the exercise of their rights to use religious documents and texts under threat of continued punishment by Defendants.

## IV.   IDENTIFICATION OF DEFENDANTS

48.   The Public Charter School Commission ("Commission"), acting through its members, is tasked with oversight of public charter schools, including the Academy.

49.   The Commission and its members are under the authority of the State Board of Education.

50.   The Commission's, and therefore its members', authority is limited to that which is expressly enumerated in Idaho statutes and administrative code.  *See* I.C. 33-5201, et seq and IDAPA 08.02.04.

51.   The Commission is comprised of seven members, all appointed by the Governor.

52.   The Commission, acting through its members, has issued the Order ruling that Plaintiffs cannot utilize any religious documents or text in their curriculum or in the classroom.

53.   William Goesling is the Chairman of the Commission and is sued in both his individual capacity and in his official capacity as Chairman of the Commission.

54.   Brad Corkill, Gayann DeMordaunt, Gayle O'Donahue, Alan Reed and Esther Van Wart are

8

all sued individually and in their official capacities as members of the Commission.

55.   The members have voted to issue the challenged Order that prohibits Plaintiffs from utilizing any and all religious documents or text in the classroom or as part of the curriculum under sanction of a notice of defect, followed by revocation of the Academy's charter if Plaintiffs continue to refuse to remove all such religious documents.

56.   Revocation of the Academy's charter would, among other things, close the school, leave over 500 students without a school to attend, eliminate the jobs of dozens of teachers and employees, and require that all the Academy's assets be transferred to the Commission.

57.   Plaintiffs are challenging this Order both on its face and as applied to them.

58.   The Idaho State Board of Education ("Board"), acting through its members, is the designated policy-making body for all of Idaho's educational institutions, agencies and schools, including the Charter School Commission and the Academy.

59.   The Board's power is prescribed by law. *See* Idaho Const. Art. IX, § 2.

60.   The Board, acting through its members, is responsible for all acts of the Commission and for ensuring that its policies and procedures are followed.

61.   The Board, through all of its members, has adopted a new Policy and procedure of prohibiting all religious documents and text from being utilized as educational resources in all public schools in the state, including at the Academy.[1]

62.   Dr. Michael Rush is the Executive Director of the Board and is sued individually and in his official capacity as Executive Director of the Board.

---

[1] Since Plaintiffs are challenging both the Order and the Policy, and the Commission is under the authority of the Board, each reference herein to the Order or Policy applies to both whether or not individually mentioned.

63.    In this capacity, Dr. Rush is responsible for adopting rules and regulations that govern all Idaho public schools, including the Idaho Charter School system, and for ensuring its rules and regulations are followed, including the Policy challenged herein prohibiting Plaintiffs from utilizing any religious text in the curriculum or in class.  He is sued in his official and individual capacities.

64.    Idaho State Board of Education members include Paul Agidius, Board President, Richard Westerberg, Board Vice President, Kenneth Edmunds, Board Secretary, Emma Atchley, Board member, Rod Lewis, Board member, Don Soltman, Board member, and Milford Terrell, Board member. The members are all sued individually and in their official capacities as members of the Board.  All members are responsible for adopting rules and regulations that govern the all Idaho public schools, including the Idaho Charter School system, and for ensuring its rules and regulations are followed, including the Policy challenged herein prohibiting Plaintiffs from utilizing any religious text in the curriculum or in the classroom.

65.    Tom Luna is the Superintendent of Public Instruction, the Chief Executive Officer of the State Department of Education, and the Executive Secretary of the Board.

66.    Mr. Luna is sued individually and in his official capacities as Superintendent, Chief Executive Officer, and as Executive Secretary.

67.    In these positions, Mr. Luna is responsible for adopting rules and regulations that govern all Idaho public schools, including the Idaho Charter School system.  He is responsible for executing and enforcing the policies, procedures, and duties authorized by applicable state and federal statutes and the policies and procedures of the Board for all the elementary and

10

secondary schools in Idaho.  He is responsible for carrying out and enforcing the policies, procedures and duties authorized by law, including the Policy challenged herein.

68.   Defendant Lawrence Wasden is the Attorney General of the State of Idaho.  In this capacity, Mr. Wasden is responsible for advising all state agencies, including the Board and the Commission, regarding matters of law.  His office provided the legal opinion upon which the Commission relied in Ordering Plaintiffs to discontinue use of all religious documents and text in the curriculum or in the classroom.  Mr. Wasden is also charged under the Idaho Constitution with representing the Board and Commission in enforcing their rules, regulations, and policies, along with generally enforcing state law.  Mr. Wasden is responsible for enforcing the Policy prohibiting Plaintiffs from utilizing any religious documents and texts.  He is sued in his official capacity.

## V.    STATEMENT OF FACTS

69.   Plaintiffs Academy and Moffett originally began the process for developing a charter school in 2003.

70.   After years of researching, drafting and planning, Plaintiffs Academy and Moffett presented their original Charter Petition–which was over sixty pages long–to the Commission and the State Board of Education in October of 2007.

71.   Plaintiffs Academy and Moffett presented their Final Petition in July of 2008.

72.   The State Board of Education officially approved the Charter in September of 2008.

73.   Plaintiffs Academy and Moffett met several additional times with the Commission, or associated bodies, throughout  2007, 2008 and 2009.

11

74.    Each time, Plaintiffs Academy and Moffett received positive responses from the Commission.

75.    The Commission was aware that the curriculum focused on utilizing primary sources and not on traditional textbooks.

76.    In a meeting that occurred in late July, 2009, however, Defendant Commission members, for the first time, raised the question whether it was permissible to use the Bible in any manner as part of the curriculum.

77.    Commission members requested a legal opinion letter, which was to be submitted by August 11th, three days prior to a specially called meeting to decide the issue.

78.    Plaintiffs retained counsel and submitted the letter.  Attached as Ex. 3

79.    At the August 14th meeting, Defendant Commission members voted to prohibit Plaintiffs from using any "religious documents and text" in its curriculum or in the classroom, *see* Ex. 1, based on an opinion letter that the Commission had requested and received from the Office of the Attorney General of Idaho, *see* Ex. 2.

80.    The Order warned that if Plaintiffs proceeded to use any such religious documents or text it would be issued a notice of defect for the purpose of revoking the charter.

81.    This Order was issued despite the fact that officials from the State Department of Education and the Commission routinely made public statements about the legality of using the Bible and other religious texts in public schools.

82.    Moreover, the Idaho Constitution, article IX, section 6, upon which the denial was based, does not prohibit "religious documents or text."  Rather it prohibits "books, papers, tracts or

documents of a political, sectarian or denominational character" and prohibits "sectarian or religious tenets or doctrines."

83.    Defendants conveniently ignore the Constitution's prohibition on political documents, which exists in precisely the same Constitutional provision, and which has not been enforced at all against any public school. According to Defendants' hyper-strict construction of this provision, it would be unconstitutional for public schools to study the Declaration of Independence or the Mayflower Compact; two obviously political (and arguably religious) documents.

84.    In its letter, Plaintiffs' counsel pointed out that use of the Bible, for example, is not prohibited by this section for several reasons: first, based on the history of the constitutional convention, the Commission was engaging in an incorrect and overly-strict reading of this provision because the Bible was not and is not a "sectarian or denominational" book (there are many different denominations and sects that follow the Bible's teachings); second, the founders' primary focus was to prohibit doctrinal disputes but not to attack religion generally, hence the narrow prohibition of sectarian or religious tenets or doctrines being taught; third, the votes of the delegates to the convention made clear that the Bible could be taught in public schools. *See* Ex. 3.

85.    Plaintiff also pointed out that Defendants' prohibition would violate several federal constitutional rights of Plaintiffs.

86.    Plaintiffs have no intent, nor have they ever, to use any religious text in devotional manner, nor will any sectarian or religious tenets or doctrines be taught.

87.     Religious materials, like all other documents and text, are utilized in an appropriate study of western civilization in classes such as history, literature, art or music.

88.     Plaintiffs currently use many different religious and political documents and texts, similar to many other public schools in the State.

89.     Some examples of "religious documents or text" that Plaintiffs use include the Bible, the Koran, the Book of Mormon, the Hadieth, the Epic of Gilgamesh, Hesiod Theogony Works and Days (Greek gods), the Code of Hammurabi (Babylonian), teachings of Confucianism, Hinduism, ancient Egyptian religions, Assyrian religions, Roman gods, Eastern religions, Mesopotamian religions, etc.

**Other Public Schools and the Use of Religious Documents and Text**

90.     The State Department of Education has issued curriculum content standards that contain religious and political studies.

91.     The Department has included in its list of public school courses a Biblical Literature class.

92.     State geography objectives include describing the historical origins, central beliefs, and spread of major religions, including Judaism, Christianity, Islam, Hinduism, Buddhism, and Confucianism.

93.     Geography standards also include the requirement to compare and contrast cultural and religious patterns in the eastern hemisphere, including a discussion of how religion influences behavior in different societies.

94.     Likewise, state language arts standards require an evaluation of political and religious influences of the relevant historical period.

95.     Similarly, state world history and civilization standards include the objectives of explaining how religion affected people's understanding of the natural world, how it shaped the development of western civilization, and how it influenced social behavior.

96.     Despite the indisputable educational value of studying primary religious (and political) sources, the Commission's remarkable position forces Plaintiffs to shut these sources out of the classroom.

97.     Prior to the recent ruling, the spokesperson for the Board publicly stated that it is permissible to use the Bible in literature or history courses.

98.     The Commission's program manager has stated publicly its position that it is permissible to use the Bible as a text in history or literature courses.

99.     So too has Defendant Luna stated his position that it is permissible to objectively teach utilizing religious texts, such as the Bible, in public schools.

100.    Just by way of example of the many schools across the state that utilize religious documents as part of their curriculum in accordance with the state curriculum content standards, the Independent School District of Boise City incorporates into its curriculum or studies: "sacred texts: the Book of the Dead, Hebrew: Genesis [the Bible], Rig Veda [Hinduism], and the Koran [Islam];" native American spiritual world, Puritan theological studies, Theism, and Transcendentalism.

101.    The Boise City School District also incorporates into their curriculum as literature: "Praise Songs, Proverbs, The Parable of the Prodigal Son [Bible], Zen Teaching and Zen Parables [Buddhism]."

102.    This does not even take into account the plethora of documents utilized by Plaintiffs, and in other public schools in the State, that themselves reference the Bible or Biblical teachings, such as <u>Shakespeare</u>, <u>The Grapes of Wrath</u>, <u>Of Mice and Men</u>, <u>The Old Man and The Sea</u>, and <u>To Kill a Mockingbird</u>.

**Other Charter Schools and the Use of Religious and Political Documents and Text**

103.    Other charter schools also incorporate religious and political documents and text into their curriculum.

104.    Idaho Virtual Academy ("IDVA") is one such school.

105.    IDVA's literature courses incorporate religious documents such as the Bible as part of the lessons.

106.    Xavier Charter School utilizes a classical based curriculum and relies on primary sources.

107.    Xavier teaches about the major religions and belief systems throughout history utilizing the Hebrew scriptures (the Torah), the Bible, and Greek mythology.

108.    Classes such as History, Civic Responsibility and Political Novel Discourse emphasize Judeo-Christian and Greco-Roman thought and establish the religious and/or political contexts crucial to understanding western civilization.  These courses utilize religious and/or political documents and text as primary sources.

109.    K12 curriculum, which is used by charter schools, likewise utilizes religious and/or political documents and text as primary sources in, for example, history, government, and politics classes where students investigate major religions and belief systems throughout history and examine the roles of political parties and culture.

16

110.   Unsurprisingly, the inclusion of religious and political writings in curricula used in public schools statewide, including original documents and text, is undeniable.

**The State Board of Education**

111.   The State Board of Education through its members has authority over charter schools and over the Commission and has promulgated rules for its governance. *See* Idaho Administrative Code "ADAPA" 08.02.04, "Rules Governing Public Charter Schools."

112.   The Board, through its members, also grants or withholds charter approvals.

113.   The Board, through its members, has approved the Academy's charter.

114.   The Board, through its members, has the authority to overrule the Commission's decision regarding their overly restrictive and incorrect reading of the applicable constitutional provision as it pertains to prohibiting any "religious documents or text."

115.   The Board members refuse to exercise such authority and have therefore approved of and acquiesced in the Commission's decision.

116.   The Board members have approved the Order and therefore have created a Policy and procedure of the Board.

117.   Ironically, the State Board of Education has included a Bible as Literature course in its course list for the state's public schools.

118.   Such a course violates the Order as issued by the Commission and as adopted by the Board members.

119.   Further, the Order of the Commission members and Policy of the Board members are outside their statutory authority.

17

120.  Charter schools are statutorily exempt from rules governing school districts, except for a short enumerated list that has no application here.  *See* I.C. 33-5210(4).

121.  As such, charter schools are exempt from state curriculum requirements that are issued by the Board which mandate choice of state-approved textbooks in the curriculum.  *Id.*

122.  Thus, Defendants are violating state law by trying to do indirectly (control Plaintiffs' curriculum)  that which they cannot legally do directly.

**The Authority of the Commission**

123.  The Commission members only hold as much authority as is provided in the law.

124.  The laws relating to the formation of charter schools and the Commission members' authority is clearly delineated in the Idaho Code, sections 33-5201, *et seq; see also* ADAPA 08.02.04.

125.  For instance, as discussed above, Commission members do not have complete authority over the curriculum of charter schools, and specifically as it relates to choice of textbooks or use of primary sources.  *See* I.C. 33-5210(4).

126.  Also, the Commission members' authority to issue a notice of defect is limited to certain grounds.  *See* I.C. 33-5209.

127.  Plaintiffs have not violated any of the enumerated grounds for issuance of a notice of defect or revocation of its charter.

128.  Defendants are apparently relying on the catch-all provision that if a charter school has "violated any provision of law," they may issue a notice of defect.  *See* I.C.33-5209 (2)(f).

129.  But the only "violation" of any law has been concocted by Defendants themselves.

130.  It is Defendants' incorrect reading of the Idaho constitution that created the alleged violation.

18

131.   Defendants base their prohibition of "religious documents or text" on the language found in article IX, section 6 of Idaho's Constitution.

132.   This section, however does not prohibit "religious documents or text," but rather prohibits "sectarian or religious tenets or doctrines" and "books, papers, tracts or documents of a political, sectarian, or denominational character" from being introduced in public schools.

133.   There exists a tremendous difference between what Defendants have prohibited and what the constitution actually prohibits: the Idaho founders intended on prohibiting doctrinal disputes (the truth or accuracy of denominational tenets), not the objective study of the Bible or other religious texts.

134.   As stated above, Defendants ignore the Constitution's prohibition on political documents, which exists in the same Constitutional provision, and which has not been enforced at all against any public school.  According to Defendants strict construction of this provision, it would be unconstitutional for public schools to study any "political" documents or text (whatever that may include).

135.   Since Plaintiffs have not violated any provision of law, Commission members are without any authority to issue the notice of defect.

## VI.   ALLEGATIONS OF LAW

136.   All of the acts of Defendants, their officers, agents, employees, and servants were executed and are continuing to be executed under the color and pretense of the policies, statutes, ordinances, regulations, customs, and usages of the State of Idaho.

19

137.    The decision to deny Plaintiffs' right to incorporate religious documents into the curriculum and the classroom is a direct result of Laws, policies, practices, customs, and usages officially adopted and promulgated by the Defendants.

138.    Unless Defendants' censorship of Plaintiffs' curriculum materials is enjoined, along with the Policy upon which it is based, Plaintiffs will continue to suffer irreparable harm to their constitutional and statutory rights.

139.    Plaintiffs have no adequate or speedy remedy at law to correct or redress the deprivation of their rights.

140.    Plaintiffs desire to utilize religious and political texts and documents in the curriculum and in the classroom without being prohibited from doing so, without a determination of illegality, without receiving a notice of defect for violating the law, and without revocation of the Academy's charter.

141.    Unless Defendants' unconstitutional Policy is enjoined, the Academy will be unable to open its doors as scheduled on September 8th without Plaintiffs being in violation of the Policy.

142.    It is impossible for Plaintiffs to abide by Defendants' Policy for several reasons: first, it is unconstitutionally vague and Plaintiffs cannot know what "religious and/or political documents or texts" would violate the Order; second, there would exist tremendous gaps in the curriculum if all such documents were required to be removed; and third, it has taken years to prepare and draft the curriculum, and it cannot be rewritten to satisfy Defendants' Policy within the time that remains for the Academy to open its doors.

143.    If the Academy is forced to close its doors, over 600 students, teachers and administrators, including Plaintiffs, will be displaced for the current semester.

144.    If Plaintiff Academy remains open but must comply with the Order, which in fact states that
        it is operating in violation of the law, Plaintiffs will be irreparably harmed in a myriad of
        ways: they will be unable to teach or learn from a vast amount of educationally valuable
        resources; they will be unable to exercise their First Amendment rights to use such materials,
        they will lose their good reputation, they will continue to lose students who do not want to
        attend a school with an uncertain future (they have already had several students withdraw
        over this issue), they would be forced to operate without a complete curriculum, which
        would significantly diminish the quality of the education they are offering, and their federal
        and state constitutional and statutory rights will be violated.

145.    Plaintiffs therefore request that this Court maintain the status quo and enjoin Defendants'
        unconstitutional Order, enjoin Defendants from issuing any such notice of defect or finding
        of illegality or revocation, until such time as this issue can be fully litigated.

146.    There should be no rush on the part of Defendants as this issue carries much constitutional
        significance, particularly since it applies to all schools across the State, regardless of whether
        Defendants enforce it in that manner.

147.    Many public schools across the state are utilizing both religious and political documents and
        text (which violates Defendants' Policy), as they have for decades.

148.    There is no harm to Defendants to allow Plaintiffs to utilize the same resources as other
        schools across the state until this issue has been analyzed and litigated more thoroughly.

149.    Defendants' entire premise is based on a misreading of the constitution and their actions are
        violating Plaintiff's rights.

150.    If Defendants are permitted to enforce the Order against Plaintiffs and are proved wrong, the harm to Plaintiffs cannot be undone; if Defendants are proved correct, no harm would have come to them.

### FIRST CAUSE OF ACTION
### VIOLATION OF PROCEDURAL DUE PROCESS UNDER THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION

151.    Plaintiffs reallege the preceding paragraphs and incorporate them herein.

152.    Defendants have violated Plaintiffs procedural due process rights by issuing the Policy that is contrary to the Constitution's written terms, that is overly restrictive of the use of religious texts in public schools, and that violates Plaintiffs' rights.

153.    The Policy is an unconstitutionally vague restriction on its face and as applied because it fails to adequately advise, notify, or inform persons subject to its requirements, such as Plaintiffs, including the requirement as to exactly what it prohibits.

154.    The Policy is an unconstitutionally vague restriction on its face and as applied because it fails to provide fair notice and warning to individuals, such as Plaintiffs, as to what constitutes religious documents or text.

155.    The Policy is unconstitutionally vague because it lacks any standards or criteria to guide those charged with enforcing it and thus gives Defendants unbridled discretion to determine what documents or texts are, and are not, religious, and therefore, permissible or impermissible within public schools.

156.    Defendants have admitted they do not even know what documents are considered religious.

22

157.   Consequently, there are innumerable instances in which the Policy's intended application is unclear, causing a real and substantial deterrent effect  on a broad range of constitutionally-protected expression

158.   Plaintiffs and other school officials and students will be forced to steer far clear of using any prohibited documents to avoid the substantial penalties for non-compliance, which will further chill constitutionally-protected expression.

159.   The Policy's vagueness also creates a significant risk of arbitrary and discriminatory enforcement, because it fails to adequately define what it prohibits.

160.   In fact, this arbitrary and discriminatory enforcement has already occurred. Defendants have arbitrarily and discriminatorily enforced the Order against Plaintiffs, but have not imposed similar restrictions on any other public school, including charter schools, within the state.

161.   The Policy imposes irrational and unreasonable restrictions on the exercise of Plaintiffs' constitutional and statutory rights.

162.   Defendants have violated Plaintiffs' due process rights by acting arbitrarily, capriciously, unreasonably, and with improper motives by selectively enforcing the Policy as to Plaintiffs, but not as to other public schools, teachers, or students within the state.

163.   Defendants are arbitrarily and discriminatorily targeting Plaintiffs' choice of curriculum, including selective enforcement of the alleged "religious" prohibition in the Idaho constitution while ignoring the "political" prohibition that appears in the very same sentence of the same constitutional provision.

164.   Defendants do not have a compelling, or even rational, reason to prevent Plaintiffs from the objective utilization of religious documents as part of the curriculum or classroom.

165.    The Policy violates Plaintiffs' procedural due process rights on its face and as applied in violation of the Fourteenth Amendment to the United States Constitution.

166.    Wherefore, Plaintiffs respectfully pray that the Court grant the relief set forth hereinafter in the prayer for relief.

**SECOND CAUSE OF ACTION: VIOLATION OF THE FREE SPEECH CLAUSE OF THE FIRST AMENDMENT TO THE U.S. CONSTITUTION**

167.    Plaintiffs reallege all matters set forth in the paragraphs 1 -148 and incorporate them herein.

168.    The Defendants' discretion to manage school affairs is limited by the imperatives of the First Amendment.

169.    Defendants' Policy prohibits speech in advance if it taking place, discriminates against speech based on its content and viewpoint, violates academic freedom, violates the right to receive information, and is an overbroad restriction on speech.

170.    Defendants' Policy prohibits a substantial amount of free expression in public schools, including a vast array of documents and texts that Plaintiffs currently use.

171.    Plaintiffs' curriculum includes both secular and religious documents and text, but only those that are religious are singled out for prohibition.

172.    The Policy prohibits any speech from a religious document or text, even if it is relevant, appropriate, and applicable to the particular educational study.

173.    Defendants have complete and unbridled discretion, without any guidelines whatsoever,  to determine what speech is from a religious document or text.

24

174.    Is it only primary sources that are banned, and if so, who determines what constitutes a primary source?  Does the Order's ban apply to secondary sources?  And if a secondary source quotes religious text from a prohibited primary source, is that prohibited or allowed?

175.    Defendants' Policy is an unconstitutional prior restraint because it prohibits speech in advance of it taking place and Defendants have no guidelines to govern their ad hoc decision making.

176.    Defendants' Policy also discriminates against the content and viewpoint of speech.

177.    Defendants permit any curriculum or class work to include secular content and viewpoints, but they simultaneously prohibit religious content and viewpoints discussing the same subjects.

178.    It is permissible to study literature, for example, from a secular point of view, but not from a religious point of view.

179.    In American History, for example, it would be permissible to read from any book that was utilized in the drafting our country's laws (assuming, of course, such books were not deemed impermissibly political in nature and did not incorporate "too much" religious text), but it would be impermissible to read from the Bible, even though much of our legal code is derived from the Old Testament.

180.    The same holds true for all subject matters.

181.    Such content and viewpoint based discrimination is unconstitutional.

182.    Defendants' Policy likewise violates educators' academic freedom protected by the First Amendment.

183.    Schools and teachers have a constitutional right to teach and utilize materials that are in accordance with their established curriculum.

184.    Defendants' Policy censors Plaintiff Moffett, and all other teachers, and prohibits them from using any religious texts, even objectively as a resource to teach literature, history, art, music, geography, or any other subject, even though the material is of educational value.

185.    Defendants' Policy also violates M.K.'s, and all other students', fundamental right to receive information that is of educational value.

186.    The right to receive information is an inherent corollary of the right of free speech and is a necessary predicate to M.K.'s meaningful exercise of her own rights of speech, press, and political freedom.

187.    Religious documents and text are invaluable educational resources for many subject matters, including history, literature, art, music, civics, geography and law.

188.    The Policy also prohibits M.K.'s right to use the Bible or other religious texts in class when doing coursework, projects, presentations, etc.

189.    Completely censoring any and all religious documents and text eliminates a large amount of Plaintiffs' appropriate educational materials and is both content and viewpoint based.

190.    The Policy is also extremely and substantially overbroad.

191.    It covers an enormous amount of protected, non-disruptive speech for prohibition.

192.    The Policy is not properly aimed at any specific government interest and is not reasonably related to any legitimate pedagogical concern.

193.    Wherefore, Plaintiffs respectfully pray that the Court grant the relief set forth hereinafter in the prayer for relief

## THIRD CAUSE OF ACTION: VIOLATION OF THE ESTABLISHMENT CLAUSE OF THE FIRST AMENDMENT TO THE U.S. CONSTITUTION

194.    Plaintiffs reallege all matters set forth in the paragraphs 1 -148 and incorporate them herein.

195.    The Establishment Clause of the First Amendment requires the government to act with a secular purpose, to neither promote nor inhibit religion, and forbids excessive entanglement with religion.

196.    Defendants are inhibiting religion to such an extent that every public school, teacher and student cannot include any religious documents or text in the curriculum or in class.

197.    By specifically prohibiting religious documents from the classroom, any objective observer would understand that the Defendants disapprove of religion and believe that it has no place in our educational system.

198.    Every court to consider the issue has acknowledged that it is constitutionally permissible to teach the Bible in an objective manner as part of history, literature, geography, art or music, etc.

199.    Defendants' hostility is evinced by the fact that Plaintiffs can utilize poetry reading from every secular source, but not from a religious source, such as the Book of Lamentations.

200.    Plaintiffs are permitted to study every great literary work, but none that are religious.

201.    Even a secondary source that quotes the Bible or other religious documents includes religious text and therefore must be excluded from public school classrooms under the Policy.

202.    Defendants' Policy also creates excessive entanglement with religion.

203.    The Policy requires that government officials scrutinize and continually monitor every aspect of every public school's curriculum and other classroom-related expression to determine whether it introduces religious text or documents in the classroom.

204.    Government officials are not qualified to determine what a religious document may be, what comprises religious text, how much text it takes for a document to be religious, what type of text makes a document religious, or to distinguish between primary and secondary religious sources.

205.    This broad-reaching prohibition would exclude reading many of our founding documents which contain many Biblical quotations and text.

206.    Defendants have violated the Federal Establishment Clause as applied to the states through the Fourteenth Amendment by inhibiting religion and by becoming excessively entangled with religion.

207.    Wherefore, Plaintiffs respectfully pray that the Court grant the relief set forth hereinafter in the prayer for relief

**FOURTH CAUSE OF ACTION: VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION**

208.    Plaintiffs reallege all matters set forth in the paragraphs 1 -148 and incorporate them herein.

209.    The Policy allows other public schools, teachers and students similarly situated to Plaintiffs to utilize religious documents in their curriculum and in class.

210.    The Policy also allows other charter schools, teachers and students similarly situated to Plaintiffs to utilize religious documents and text in their curriculum and in class.

211.    The Policy treats Plaintiffs differently by not permitting them to utilize similar resources.

212.   Defendants have intentionally discriminated against Plaintiffs by issuing their illegal Policy, and through its discriminatory and selective enforcement.

213.   Defendants have also enacted their Policy in a manner that selectively enforces sections of the constitutional provision that they are allegedly following.

214.   Defendants are enforcing the alleged religious prohibition while they completely ignore the political prohibition found in the same provision.

215.   Such selective enforcement shows that Defendants are indeed targeting Plaintiffs for discrimination in their use of religious texts as part of their curriculum and in class because many schools in the state utilize such documents as part of their curriculum and in class.

216.   Further, this selective enforcement is proven by the fact that Defendants allow the prohibited political documents to be used, but only enforce the religious prohibition.

217.   Defendants can offer no rational or compelling interest to justify their discriminatory treatment against Plaintiffs as compared to others who are similarly situated, or their discriminatory enforcement of one part of the constitutional provision while ignoring another.

218.   The Policy facially and as applied violates Plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution

219.   Wherefore, Plaintiffs respectfully pray that the Court grant the equitable and legal relief set forth hereinafter in the prayer for relief.

**FIFTH CAUSE OF ACTION: ULTRA VIRES ACTIONS BY DEFENDANTS: VIOLATION OF IDAHO CODE SECTIONS 33-5209 AND 33-5210; DEFENDANTS' POLICY AND ORDER DO NOT COMPLY WITH THE ENUMERATED POWERS FOR ISSUING A NOTICE OF DEFECT OR REVOCATION, AND ARE IN VIOLATION OF STATE LAW EXEMPTING CHARTER SCHOOLS FROM STATE CURRICULUM REQUIREMENTS**

220.   Plaintiffs reallege all matters set forth in the paragraphs 1-148 and incorporate them herein.

221.   The parameters of Defendants' authority are prescribed by state law.

222.   Defendants are not empowered to exceed their statutorily-granted authority.

223.   Defendants are prohibited from issuing any orders or enacting any policies that violate general laws, including provisions of the Idaho Constitution, acts of the state legislature, and the Constitution and laws of the United States.

224.   Idaho Code section 33-5209 enumerates the conditions under which Commission members can issue a notice of defect, followed by revocation.

225.   In order to bring such actions, Plaintiffs must have violated at least one or more of the listed provisions.

226.   Plaintiffs have not violated any of the enumerated provisions.

227.   Defendants have exceeded their authority under this statute by claiming that Plaintiffs have violated the catch-all provision, which requires a violation of any law by Plaintiffs.

228.   But Plaintiffs have violated no law.

229.   Defendants have concocted this violation by claiming that using the Bible or any other religious document or text–even in an objective manner–as part of Plaintiffs' curriculum or class work violates article IX, section 6 of the Idaho Constitution.

230.   But this section does not prohibit any use of religious documents or text, it only prohibits political, sectarian or denominational documents.

30

231.    An objective study of the Bible and the additional religious documents are not prohibited by this section.

232.    Since Plaintiffs have not violated this section, or any other, Defendants are without authority to issue the challenged Order, the concurrent Policy, a notice of defect, or revoke the charter.

233.    Defendants have also acted outside the scope of their authority by attempting to exert greater control over Plaintiffs' curriculum and choice of text usage than currently granted by law.

234.    Idaho Code section 33-5210 specifically exempts the curriculum of charter schools from the reach of Defendants' authority.

235.    This section states that "each public charter school is otherwise exempt from rules governing school districts which have been promulgated by the state board of education...."

236.    The section includes five exceptions to this rule that have no application here.

237.    According to this statute, Defendants have no authority to determine what books or resources Plaintiffs' may include in their curriculum or class work.

238.    Defendants are trying to control Plaintiffs' curriculum indirectly under their Order, Policy and threat of revoking the charter, when state law forbids them from doing the same directly.

239.    Wherefore, Plaintiffs respectfully pray that the Court grant the relief set forth hereinafter in the prayer for relief.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray for judgment against Defendants as follows:

A.    Declare Defendants' Order and Policy, which prohibit Plaintiffs from utilizing any religious document or text in the curriculum or in the classroom, unconstitutional on their face because they violate Plaintiffs' statutory and constitutional rights;

31

B.      Declare Defendants' Order and Policy, which prohibit Plaintiffs from utilizing any religious document or text in the curriculum or in the classroom, unconstitutional as applied because they violate Plaintiffs' statutory and constitutional rights;

C.      Issue a preliminary and permanent injunction enjoining the Defendants, their agents, servants, employees, and officers from enforcing their Order and Policy prohibiting Plaintiffs inclusion of religious documents or texts in the classroom or as part of the curriculum, enjoining Defendants from issuing a notice of defect, and enjoining Defendants from revoking Plaintiffs' charter, based on the use of religious documents or text in the curriculum or in the classroom.

D.      Grant Plaintiffs nominal damages against the individual capacity defendants based on the violation of Plaintiffs' civil rights as alleged herein;

E.      Grant Plaintiffs their costs of litigation, including reasonable attorneys' fees and costs; and

F.      Grant such other and further relief as this Court deems just and proper.

Respectfully submitted this 2nd day of October, 2009.

/s/ David A. Cortman                          /s/ Bruce D. Skaug
DAVID A. CORTMAN*                    Bruce D. Skaug
dcortman@telladf.org                       bruce@legaleaglesnw.com
GSB # 188810                                   IBN # 3904
ALLIANCE DEFENSE FUND          GOICOECHEA LAW OFFICE – NAMPA LLP
1000 Hurricane Shoals Road, NE     1226 E. Karcher Road
Building D, Suite 600                        Nampa, Idaho 83687
Lawrenceville, GA 30043                  Telephone: (208) 466-0030
Telephone: (770) 339-0774              Facsimile: (208) 466-8903
Facsimile: (770) 339-6744


Gary S. McCaleb*
gmccaleb@telladf.org
ASB # 018848
ALLIANCE DEFENSE FUND
15100 N. 90th Street
Scottsdale, AZ 85260
Telephone: (480) 444-0020
Facsimile: (480) 444-0028
* Admitted Pro Hac Vice

*Attorneys for Plaintiffs*

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I, the undersigned, declare under penalty of perjury that:

1.      I am a citizen of the United States and a resident of the State of Idaho;

2.      I am currently Chairman of the Board of the Nampa Classical Academy, a Plaintiff in this action, and am authorized to speak on behalf of that organization; and

3.      I have read the foregoing Amended Verified Complaint and the facts as alleged are true and correct.


Executed this 30TH day of SEPTEMBER, 20 09 in Nampa, Idaho.


_____
Kyle Borger, Chairman of the Board and on
behalf of Nampa Classical Academy

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I , the undersigned, declare under penalty of perjury that:

1.      I am a citizen of the United States and a resident of the State of Idaho;

2.      I am a Founder and currently an Ad Hoc Board member of the Nampa Classical Academy, a Plaintiff in this action,

3.      I am a teacher at the Academy; teaching classes including 7th and 8th grade Geography, 11th grade United States history and 12th grade Civics.

4.      I have read the foregoing Amended Verified Complaint and the facts as alleged are true and correct.

Executed this 30TH day of SEPTEMBER    , 2009 in Nampa, Idaho.

Isaac Moffett

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I , the undersigned, declare under penalty of perjury that:

1.      I am a citizen of the United States and a resident of the State of Idaho;

2.      I have read the foregoing Amended Verified Complaint and the facts as alleged
        are true and correct.

Executed this 30ᵗʰ day of September , 20 09 in Nampa, Idaho.

_____
Maria Kosmann

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I , the undersigned, declare under penalty of perjury that:

1.      I am a citizen of the United States and a resident of the State of Idaho;

2.      I have read the foregoing Amended Verified Complaint and the facts as alleged are true and correct.


Executed this _30th_ day of _September_, 20_09_ in Nampa, Idaho.


_____
M. K.