# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

NAMPA CLASSICAL ACADEMY, *et al*.,  )
                                    )       Case No. CV09-427-S-EJL
            Plaintiffs      )
                                      )
     vs.                       )       **MEMORANDUM, DECISION,**
                                      )       **AND ORDER**
                                        )
WILLIAM GOESLING, *et al*.,      )
                                      )
         Defendants.     )
—————————————————————)

Before the Court in the above entitled matter are the Defendants' motion to dismiss, the Plaintiffs' motion for preliminary injunction, and the Defendants' motion to waive. The motions are fully briefed and ripe for the Court's consideration. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the motions shall be decided on the record before this Court without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(2)(ii).

## Procedural Background

The Plaintiffs, Nampa Classical Charter Academy ("NCA"), Isaac Moffett, Maria Kosmann, and M.K. (collectively "the Plaintiffs"),[1] initiated this action following the August

---

[1] Plaintiff Isaac Moffett is NCA's founder and a teacher at the school and brings this action both in his official capacity and individually. Plaintiff Maria Kosmann is a teacher at NCA and the mother of Plaintiff M.K., a student at NCA. Ms. Kosmann brings this action both individually and as a school employee and parent of several children attending NCA.

14, 2009 special meeting of the Idaho Public Charter School Commission's (the "Commission")[2] where the Commission adopted the Attorney General's position that the use of religious documents or texts in public school curriculum would violate Article IX, § 6 of the Idaho Constitution. (Docket No. 1, Ex. 1). This position adopted by the Commission, that NCA calls the "Policy," prompted the Plaintiffs to file the instant complaint alleging violations of the First Amendment, Due Process Clause, Equal Protection Clause, Establishment Clause, and violation of Idaho Code § 33-5209 and § 33-5210.  (Docket No. 1).[3]  The claims allege that the Policy unlawfully prohibits the use of any "religious documents or text in a public school curriculum" or to "use religious text in class or in the classroom."  (Docket No. 1, p. 3).

The complaint names several Defendants including: the Commission Chairman, William Goesling; the members of the Commission;[4] Tamara L. Baysinger, the Commission's Charter Schools Program Manager; the members of the State Board of Education (the "Board");[5] the Superintendent of Public Instruction, Tom Luna; and the Attorney General of

---

[2]  The Commission oversees public charter schools in Idaho, including NCA, under the authority of the State Board of Education.

[3]  In the second amended complaint, the Plaintiffs rename the Policy as the "Order." (Docket No. 21, p. 3, Ex. 1). The Court will use the term "Policy" in this Memorandum Decision and Order.

[4]  The Commission members named as Defendants are: Brad Corkill, Gayann DeMordaunt, Gayle O'Donahue, Alan Reed, and Esther Van Wart. (Docket No. 21).

[5]  Defendant Michael Rush is the Executive Director of the Board. The other members of the Board, Paul Agidius, Richard Westerberg, Kenneth Edmunds, Emma Atchley, Rod Lewis, Don Soltman, and Milford Terrell, have all been sued individually and in their official capacities in this case.

the State of Idaho, Lawrence Wasden.[6] (Docket No. 21, p. 9).[7] The Defendants are each named in both their individual and official capacities. On September 3, 2009, Plaintiffs filed a motion for a temporary restraining order seeking to enjoin the Defendants from "enforcing their Order and Policy prohibiting all religious documents and text from the Academy's curriculum, from issuing and enforcing a Notice of Defect,[8] and from revoking Plaintiff Academy's charter." (Docket No. 6). This Court denied the motion for temporary restraining order. (Docket No. 13). On, October 2, 2009, Plaintiffs filed an amended complaint followed by a second amended complaint on December 15, 2009. (Docket Nos. 14, 21). The second amended complaint alleges the following claims for relief:

1. Violation of Procedural Due Process Clause under the Fourteenth Amendment;
2. Violation of the Free Speech Clause of the First Amendment;
3. Violation of the Establishment Clause of the First Amendment;
4. Violation of the Equal Protection Clause of the Fourteenth Amendment;
5. Retaliation for Exercising First Amendment Rights; and
6. Violation of Idaho Code §§ 33-5209 and 33-5210.

(Docket No. 21). The second amended complaint seeks relief in the form of declaratory judgment, injunctive relief, damages against the individual capacity defendants, and costs and attorney fees. (Docket No. 21). On January 8, 2010, the Defendants' filed their answer and motion to dismiss. (Docket Nos. 22, 23). On January 27, 2010, Plaintiffs filed their

---

[6] The initial complaint named the Governor of the State of Idaho, C.L. "Butch" Otter. (Docket No. 1). Governor Otter was not named in the Second Amended Complaint. (Docket No. 21).

[7] The Defendants' briefing groups certain of the named Defendants "Commission Defendants" and "Board Defendants." (Dkt. No. 23, pp. 3-4). The Plaintiffs' second amended complaint uses the same designations. (Dkt. No. 21, pp. 8-10). The Court will utilize the same references in this Order where appropriate.

[8] "If the authorized chartering entity has reason to believe that the public charter school has [violated any provision of law], it shall provide the public charter school written notice of the defect and provide a reasonable opportunity to cure the defect." Idaho Code § 33-5209(2)(f) (2009 Supp.).

motion for preliminary injunction. (Docket No. 26). The Court now takes up the pending motions in this case.

## Factual Background

NCA is a not-for-profit organization incorporated under the laws of the State of Idaho. Its curriculum is structured in a "classical, liberal arts format, and focuses its study not on textbooks but rather on primary sources as a method of educating its students." (Docket No. 21, p. 5). Teachers at NCA utilize a variety of original/primary source documents for teaching their courses. These primary sources include both secular and religious materials such as the Bible, Koran, the Book of Mormon, the Hadieth, etc. (Docket No. 14, p. 14). By using primary source documents, NCA's staff believes they can better teach students about a wide variety of subjects.

The Board approved NCA's charter petition in September of 2008.[9] In July of 2009, however, the question of whether the Bible could be used as part of NCA's curriculum was raised at a Commission meeting. The Commission requested legal opinions on the issue be submitted before the next meeting set for August 14, 2009.

On August 11, 2009, NCA submitted a legal opinion letter to the Commission concluding that denying NCA's "right to use the Bible in its curriculum cannot pass muster under either the Constitution of Idaho or the United States Constitution." (Docket No. 24, Ex. 3). At the August 14, 2009 Commission meeting, Defendant Goesling advised NCA of the legal opinion the Commission had received from Jennifer Swartz, a Deputy in the Attorney General's Office, stating: "the use of religious documents or text in a public school curriculum will be a violation of the Idaho Constitution." (Docket No. 24, Ex. 2). Defendant Goesling then stated

on the advice of our counsel, the commission will take the position that the use of

---

[9] The Board, is the policy-making body for Idaho's educational bodies.

religious documents or text in a public school curriculum will be a violation of the
Idaho Constitution. Accordingly, the commission wishes to advise the Nampa
Classical Academy that if it proceeds to use religious text in class or in the
classroom, the commission will be required to issue the school a notice of defect.

(Docket No. 24, Ex. 1). This action was initiated on September 1, 2009.

On November 6, 2009, the Commission issued a Notice of Defect to the NCA on the grounds
that they had violated the terms of their charter and a provision of law by failing to respond in a
timely fashion to two public records requests. (Docket No. 28, Ex. 4). In total, the Commission
issued five Notices of Defect to NCA. (Docket No. 35-2, p. 5). Only one Notice of Defect addressed
the use of materials that are not allowed under Article IX, § 6. (Docket No. 22, Att. 1). At the
February 11, 2010 special meeting, the Commission adopted Guidelines for Applying the Provisions
of Idaho Constitution Article IX, § 6 (the "Guidelines"). (Docket Nos. 35-2, 35-3, 35-4). Plaintiffs'
claims allege these actions by the Defendants violated their constitutional rights.

## Analysis

I.  <u>Federal Law Claims</u>

The Federal law claims raised in this matter arise under 28 U.S.C. § 2201 and 42
U.S.C. §§ 1983 and 1988. Section 1983 is "'not itself a source of substantive rights,' but
merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v.
Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3
(1979)).[10] To establish a prima facie case under 42 U.S.C. § 1983, Plaintiffs "must adduce proof of
two elements: (1) the action occurred 'under color of law' and (2) the action resulted in a deprivation

---

[10] 42 U.S.C. § 1983, provides, in pertinent part, as follows:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of
any State, . . . subjects or causes to be subjected, any citizen of the United States or other person
within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by
the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or
other proper proceeding for redress. . . .

of a constitutional right or a federal statutory right." *Souders v. Lucero*, 196 F.3d 1040, 1043 (9th Cir. 1999) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). Stated differently, to state a claim under § 1983, a plaintiff must allege four elements: "(1) a violation of rights protected by the Constitution or created by federal statute (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The threshold inquiry for § 1983 action is "whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker v. McCollan*, 443 U.S. 137, 140 (1979). Plaintiffs Federal law claims allege violations of the First and Fourteenth Amendments. Defendants challenge the legal sufficiency of these claims which the Court takes up as follows.

A.    Rule 12(b)(1) Motion to Dismiss - Lack of Subject Matter Jurisdiction

Defendants argue both NCA and Mr. Moffett, in his official capacity, are not persons with rights to raise these claims under the Federal Constitution. They are, Defendants contend, "a State-created unit of government and a State-created office" and, thus, not "persons" entitled to the protections of the Federal Constitution and dismissal of these parties' § 1983 federal claims are appropriate.

A Defendant may move to dismiss a complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) in one of two ways. *See Thornhill Publ'g Co., Inc. v. General Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)). The attack may be a "facial" one where the defendant attacks the sufficiency of the allegations supporting subject matter jurisdiction. *Id.* On the other hand, the defendant may launch a "factual" attack, "attacking the existence of subject matter jurisdiction in fact." *Id.* When considering a "facial" attack made pursuant to Rule 12(b)(1), a court must consider the

allegations of the complaint to be true and construe them in the light most favorable to the plaintiff. *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1988). A "factual" attack made pursuant to Rule 12(b)(1) may be accompanied by extrinsic evidence. *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989); *Trentacosta v. Frontier Pac. Aircraft Indus.*, 813 F.2d 1553, 1558 (9th Cir. 1987). When considering a factual attack on subject matter jurisdiction, "the district court is ordinarily free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983) (citing *Thornhill*, 594 F.2d at 733). "[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims ." *Thornhill*, 594 F.2d at 733 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

However, "[t]he relatively expansive standards of a 12(b)(1) motion are not appropriate for determining jurisdiction ... where issues of jurisdiction and substance are intertwined. A court may not resolve genuinely disputed facts where 'the question of jurisdiction is dependent on the resolution of factual issues going to the merits.'" *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (quoting *Augustine*, 704 F.2d at 1077).  In such a case, "the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial." *Augustine*, 704 F.2d at 1077 (citing *Thornhill*, 594 F.2d at 733-35). This case does not require the Court to resolve substantive issues in determining whether jurisdiction is proper.

In this case, Plaintiffs NCA and Mr. Moffitt have alleged violations of several federal

rights under § 1983. The Supreme Court recently recognized that "[a] political subdivision...is a subordinate unit of government created by the State to carry out delegated governmental functions...a political subdivision, 'created by the state for the better ordering of government, has no privileges or immunities under the federal constitution which it may invoke in opposition to the will of its creator.'" *Ysursa v. Pocatello Educ. Ass'n*, 129 S.Ct. 1093, 1101 (2009) (citations omitted). NCA is such a political subdivision of the State as it is created by the State and, therefore, has no privileges or immunities to invoke against the State. Idaho Code § 33-5204(1) ("a public charter school created pursuant to this chapter shall be deemed a governmental entity."); *see also* Idaho Code §§ 33-5202, 5203 (2008). Likewise, NCA's officers, such as Mr. Moffett, are not "persons" with enforceable rights under the federal constitution. Accordingly, both NCA and Mr. Moffett in his official capacity cannot, as a matter of law state a claim under § 1983 against the State.[11] The motion to dismiss is granted as to these plaintiffs' federal claims. Since the remaining Plaintiffs are persons under § 1983, the Court will next address the Defendants' affirmative defense of qualified immunity.

B.     Rule 12(b)(6) Motion to Dismiss - Qualified Immunity as to All Defendants

1.     Standard on Rule 12(b)(6) Motion

---

[11] Plaintiffs counter that charter schools such as NCA are not *per se* subdivisions of the state, citing *Caviness v. Horizon Community Learning Center, Inc.*, 590 F.3d 806 (9th Cir. 2010). In *Caviness*, the Ninth Circuit determined that a private non-profit corporation that ran a charter school in Arizona was not functioning as a state actor in a § 1983 case. In Arizona, charter schools are private entities that may contract with a district governing board or the state. This arrangement is distinct from Idaho where charter schools such as NCA are not private entities but are instead created by statute as part of the public education system and, therefore, have the same rights to sue and be sued as school districts. (Docket No. 34, p. 2) (citing Idaho Code §§ 33-5202(2008), 52-5203(1), 52-5204(2) (2008) and 33-5202(2010 Supp.)). Because charter schools in Idaho are part of the state's program of public education, which is a delegated governmental function, they are not "persons" who can sue under § 1983.

"A motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint." *Schimsky v. U.S. Office of Personnel Management*, 2008 WL 5024916 *2 (S.D. Cal. 2008) (citing *Navarro v. Black*, 250 F.3d 729, 731 (9th Cir. 2001)). "A complaint generally must satisfy the notice pleading requirements of Federal Rule of Civil Procedure 8(a)(2) to avoid dismissal under a Rule 12(b)(6) motion." *Id.* (citing *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003)). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests,'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted). The court does not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in plaintiff's complaint. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). "However, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996); *see also Twombly*, *supra*. There is a strong presumption against dismissing an action for failure to state a claim. *See Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted). "'The issue is not whether a plaintiff will ultimately prevail but whether [he] is entitled to offer evidence in support of

the claims.'"  *Id.* (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982)).

Generally, the Court may not consider any material beyond the pleadings in ruling on a motion to dismiss under Rule 12(b)(6).  *See Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994). Each of the parties' pleadings in this case include attachments which the parties refer to in their pleadings and rely on in these motions. Plaintiffs' second amended complaint includes references to three such attachments: 1) minutes from the Commission's August 14, 2009 meeting, 2) opinion of the Attorney General, and 3) opinion of the Alliance Defense Fund. (Docket No. 21).[12] Likewise, Defendants' answer includes an attachment which is the Commission's November 23, 2009 letter to the NCA Board of Directors stating the Commission "has reason to believe that NCA is using and/or intends to use religious texts as part of its curriculum, in violation of the Idaho State Constitution." (Docket No. 22, Att. 1). These attachments will be considered as part of the pleadings.

However, the parties have each also relied on materials filed in the record beyond the pleadings in their briefing on the motion to dismiss. (Docket No. 23, p. Docket No. 33, p. 4). As such, the Court can only consider these attached materials if the Court converts the motion to dismiss to a motion for summary judgment. *See Jacobsen v. AEG Capital Corp.*, 50 F.3d 1493, 1496 (9th Cir. 1995) (If materials outside the pleadings are considered, the

---

[12] The only Attachment to the Second Amended Complaint is the Defendants' consent to Plaintiffs' filing the Second Amended Complaint. (Docket No. 21, Att. 1). The First Amended Complaint, however, has three attachments. (Docket No. 14, Atts. 1-3). Plaintiffs have clarified the record by filing a Supplement to the Second Amended Complaint containing the signature pages for the verified complaint and the three attachments that were filed with the First Amended Complaint. (Docket No. 24, Atts. 1-3). The Court can consider these attachments as part of the pleadings and will cite to these attachments as they appear in the record as Docket Number 24.

motion is converted to a motion for summary judgment governed by Fed. R. Civ. P. 56.). The Court has not relied upon the materials filed outside of the pleadings in reaching its decision on this motion to dismiss.[13] Accordingly, it is not necessary for the Court to convert the motion into a motion for summary judgment.

2.   <u>Qualified Immunity Standard</u>

"Qualified immunity serves to shield government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 971 (9th Cir. 2005) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).[14] If the law is not clearly established, or, if the Defendants could have reasonably believed that their conduct was lawful, they are entitled to qualified immunity. *Thompson v. Souza*, 111 F.3d 694, 698 (9th Cir. 1997). The Supreme Court has set forth the following two-pronged inquiry to resolve all qualified immunity claims:

> First, taken in the light most favorable to the party asserting the injury, do the facts alleged show the officers' conduct violated a constitutional right?  Second, if so, was that right clearly established?  The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  This inquiry is wholly objective and is undertaken in light of the specific factual circumstances of the

---

[13] In this Memorandum, Decision, and Order the Court has cited to a few materials outside of the pleadings mainly in its discussion of the facts of this case. Again, these materials were not the basis for the Court's ruling on the motion to dismiss but served only as background facts.

[14] Because qualified immunity is "an immunity from suit rather than a mere defense to liability . . ." its application here will be examined first in the context of Plaintiffs' allegations against the Defendants. *Pearson*, 129 S.Ct. at 815 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

case.

*Id.* (internal quotations and citations omitted); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001) (Whether "[t]aken in the light most favorable to the party asserting the injury, ... the facts alleged show the [defendants'] conduct violated a constitutional right. [I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established."). *Id.*[15] Thus, a district court should "concentrate at the outset on the definition of the constitutional right and determine whether, on the facts alleged, a constitutional violation could be found." *Billington v. Smith*, 292 F.3d 1177, 1184 (9th Cir. 2002) (internal quotations and citations omitted). If a constitutional violation can be found, the court then decides whether the violation was the source for clearly established law that was contravened in the circumstances of the case. *Id.* "Whether a right is 'clearly established' for purposes of qualified immunity is an inquiry that 'must be undertaken in light of the specific context of the case, not as a broad general proposition.' In other words, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Graves v. City of Coeur d'Alene*, 339 F.3d 828, 846 (9th Cir. 2003) (quoting *Saucier*, 533 U.S. at 201-02 (other citations

---

[15] This structured two-step analysis, originally required by *Saucier v. Katz*, 533 U.S. 194 (2001), is no longer mandatory in all cases. *See Pearson v. Callahan*, 555 U.S. ___, 129 S. Ct. 808 (2009). In *Pearson*, the Supreme Court recently held:

> On reconsidering the [two-step] procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.

Id. at 818. In the case at bar, the Court finds the traditional two-step format is the appropriate order of analysis.

omitted)).

Defendants argue they are all entitled to qualified immunity, because, as a "general rule 'the state is entitled to prescribe a curriculum for its public schools.'" (Docket No. 23, p. 7)  (quoting cases). Thus, no Defendant violated clearly established constitutional rights or statutory law of which a reasonable person would have known. The Defendants further assert that teachers and/or students do no have a constitutional right to teach or receive a curriculum different from that prescribed by the State.

Plaintiffs counter that all of the constitutional rights they have alleged to have been violated were clearly established at the time of the Defendants' "censorship and retaliation." (Docket No. 33, p. 19). Plaintiffs point to their rights under the First Amendment, Due Process Clause, Equal Protection Clause, Establishment Clause, and Idaho Statutes. In particular, the rights of teachers to choose which materials and sources to use in classroom teaching, the rights of students to receive that information, the rights of parents to ensure that their students receive information, and the right to be free from government action or retaliation against those who exercise their constitutional rights. (Docket No. 33, p. 19). Here in lies the crux of the dispute between the parties; have the Plaintiffs alleged a clearly established constitutional right that a reasonable person would have known and did the Defendants' conduct violate those rights. As discussed below, the Court finds Plaintiffs have not alleged a violation of a clearly established right; thus, there was no violation of a protected right by Defendants.

### 3.  Teachers'/Students' Constitutional Rights

Plaintiffs argue that "[t]eachers have a free speech right to choose which books,

sources and supplementary materials to use" and the Commission's Policy banning religious text violates the teachers' free speech rights. (Docket No. 33, p. 11). Likewise, Plaintiffs argue the students have a First Amendment right to receive an education, which is part of their right to free speech. (Docket No. 33, p. 12). In support of these claims, Plaintiffs cite primarily to *Evans-Marshall v. Board of Educ. of Tipp City Exempted Village Sch. Dist.*, 428 F.3d 223 (6th Cir. 2005) and *Montiero v. Tempe Union High School Dist.*, 158 F.3d 1022, 1029 (9th Cir. 1998). Both cases are distinct from the facts and circumstances found in this case.

In *Evans-Marshall*, the plaintiff, a teacher, was fired for using books in the classroom that had been previously approved for use by the school board. 428 F.3d at 226 (The materials in question were the novels Fahrenheit 451, To Kill a Mockingbird, and Siddhartha as well as a movie adaptation of Shakespeare's Romeo and Juliet.). The Sixth Circuit held qualified immunity was not appropriate on the motion to dismiss because the teacher's First Amendment right to be free from retaliation was clearly established. This case, however, is distinct. Here, the books sought to be used by NCA teachers have not been approved by the Commission. Just the opposite, the Commission has stated its position that certain of the materials NCA seeks to use would violate the Idaho Constitution. Further, the materials in question in *Evans-Marshall* were not religious in nature as are the materials at issue in this case.

In *Monteiro*, the Ninth Circuit confronted a dispute between parents seeking to preclude the use of certain literary works from a public school's curriculum and the school board's approval of their use and refusal to remove them from the curriculum. 158 F.3d at

1024 (The disputed materials were The Adventures of Huckleberry Finn and A Rose for Emily.). Though the Ninth Circuit engaged in a thorough discussion of the First Amendment in the school setting, the materials at issue were not religious. As a result, the Ninth Circuit explicitly excluded from its "holding and analysis educational material subject to the prohibitions of the Religion Clauses of the First Amendment." *Monteiro*, 158 F.3d at 1028 n. 6. In doing so, the Ninth Circuit recognized that the principles designed for religion in the school setting cases are particularly suited to only those type of cases, thus making the *Monteiro* case materially distinct from the case here.[16]

In considering the facts here in the light most favorable to the Plaintiffs, the Court finds they have failed to state a claim under § 1983 because neither the teachers, parents, or students at NCA have clearly established rights as alleged in this case.  Plaintiffs' arguments combine recognized constitutional rights in an effort to create a protected individual right not previously recognized. There simply is no law creating a First Amendment right of either teachers or students to use the Bible or any other sacred religious text as part of a public school curriculum.

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or ... the right of the people peaceably to assemble." U.S. Const. amend. I. The First Amendment is applicable to the states and their subdivisions through the Fourteenth Amendment. *Employment Div., Dep't of Human Resources of Ore. v. Smith*, 494 U.S. 872,

---

[16] In recognizing the distinction between non-religion and religion public school cases, this Court does not foreclose all consideration of non-religion cases.

877 (1990). The guarantee of free exercise of religion grants citizens the right to believe and

profess whatever religious doctrine they choose, and thus forbids government regulation of

religious beliefs as such. *Id.* The religion clause further prohibits government from imposing

special disabilities on the basis of religious views or status or otherwise interfering with the

practice of religious beliefs. *Id.* The government violates the Free Speech Clause of the First

Amendment when it excludes a speaker from a speech forum the speaker is entitled to enter.

*Christian Legal Soc'y v. Walker*, 453 F.3d 853, 865 (7th Cir.2006).

The Court does not dispute that teachers and students enjoy First Amendment freedom

of speech and religion rights both in and out of the classroom. Teachers and students alike

enjoy the protections of the First Amendment both inside and outside of the school setting.

*See Evans-Marshall*, 428 F.3d at 229 (quoting *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*,

393 U.S. 503, 506 (1969) ("[S]tudents and teachers do not shed their constitutional rights to

freedom of speech and expression at the schoolhouse gate" is "the unmistakable holding of

[the] Court for almost 50 years."). Here, however, the issue involves the Defendants' actions

required under Idaho law to prescribe the curriculum for public education in Idaho which is

distinct from the rights sought to be invoked here by the Plaintiffs.

The First Amendment allows a speaker to control the content of their speech and

protects an individual's right to practice whatever religion they may choose. These rights,

however, are not implicated under the circumstances of this case. Nor does the Defendants'

conduct infringe upon these rights. The speakers here are not the Plaintiffs. In setting the

public school curriculum, the Defendants are the speakers. As such, the Defendants have the

right to lawfully control the content of their speech. Moreover, the Defendants are subject

to the requirements of the Establishment Clause which precludes them from promoting religion in the classroom. The Defendants' actions here adhere to the Establishment Clause by preventing Plaintiffs from using religious texts in publicly funded schools.

Plaintiffs' arguments attempt to expand the First Amendment rights of expression and religion in a manner that would allow religion into the curriculum of public schools. Plaintiffs have provided no authority to support this argument. In fact, just the opposite is true. Students and teachers do not have a "First Amendment right to influence curriculum as they so choose." *Downs v. Los Angeles Unified School Dist.*, 228 F.3d 1003, 1015-16 (9th Cir. 2000) (citing cases). The curriculum taught in public schools is government speech; meaning "First Amendment rights have been limited." *Id.* at 1009 (discussing *Hazelwood School Dist. v. Kuhlmeier*, 484 U.S. 260, 270-73 (1998) and *Planned Parenthood v. Clark County School Dist.*, 941 F.2d 817 (9th Cir. 1991)); *see also Johnson v. Poway Unified School Dist.*, 2010 WL 768856 *7 (S.D. Cal. 2010). As the speaker, Defendants have control over the content of their speech and expressions. *See Id.* at 1015-16 ("[C]urriculum is only one outlet of a school district's expression of its policy."). Were the Plaintiffs operating a private school, their arguments would be correct as they, not the state, would be the speaker and in control of the content of their speech. Here, however, the Plaintiffs are a public charter school which accepts public funds and is organized by, and subject to the same laws as any other public school.

In addition, the Defendants must comply with the Establishment Clause of the First Amendment which states: "Congress shall make no law respecting an establishment of religion...." U.S. Const. amend. I. "Neutrality is the fundamental requirement of the

Establishment Clause, which prohibits the government from either endorsing a particular religion or promoting religion generally." *Hansen v. Ann arbor Public Schools*, 293 F.Supp.2d 780, 804 (E.D. Mich. 2003) (citing *Cutter v. Wilkinson*, 349 F.3d 257 (6th Cir. 2003); *Board of Educ. of Kiryas Joel Village Sch. Dist. v. Grumet*, 512 U.S. 687, 703 (1994) ("[A] principle at the heart of the Establishment Clause [is] that government should not prefer one religion to another, or religion to irreligion."); *Larson v. Valente*, 456 U.S. 228, 244 (1982) ("The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another."); *Gillette v. United States*, 401 U.S. 437, 450 (1971) ("[T]he Establishment Clause prohibits government from abandoning secular purposes to favor the adherents of any sect or religious organization.")). If the Defendants allowed the Plaintiffs' proposed curriculum, they would be in violation of the Establishment Clause.

The Court concludes that the Plaintiffs have not alleged constitutional rights applicable to the context and circumstances of this case. Because the Defendants have not violated Plaintiffs' constitutional rights, they are all entitled to qualified immunity. Further, as discussed below, even if the Plaintiffs had alleged constitutional rights, such rights were not clearly established. Moreover, the actions complained of by the Defendants were reasonable as it is the Defendants' obligation under the constitution and laws of Idaho to select the curriculum for public schools in Idaho.

4.     Public Education Curriculum in Idaho

Even if the Court were to assume the rights asserted by Plaintiffs did apply in this case, the rights have not been defined at the appropriate level of specificity for a court to

determine such a right was "clearly established." *Wilson*, 526 U.S. 603, 614-15 (1999) ("[C]learly established" for purposes of qualified immunity means that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." (citations omitted)). "To be established clearly, however, there is no need that 'the very action in question [have] previously been held unlawful.'" *Safford Unified Sch. Dist. No. 1 v. Redding*, 129 S.Ct. 2633, 2643 (2009) (quoting *Wilson*, 526 U.S. at 615). "[T]he law may be clearly established even if there is no case directly on point. It is enough if 'in the light of pre-existing law the unlawfulness [is] apparent." *Inouye v. Lemna*, 504 F.3d 705, 715 (9th Cir. 2007) (citations omitted); *see also Blueford v. Prunty,* 108 F.3d 251, 254 (9th Cir. 1997) (To defeat a claim of qualified immunity, a plaintiff need not establish the defendant's behavior had "been previously declared unconstitutional, only that the unlawfulness was apparent in light of preexisting law.").

Here, as determined above, the Plaintiffs' rights as they have alleged do not apply here and, if they did apply, were not clearly established. What is clear are the requirements placed upon the Defendants by the Establishment Clause to ensure they remain neutral and neither endorse or promote religion.  Therefore, the Court finds the Defendants are entitled to qualified immunity because any such rights were not clearly established such that a reasonable person would have known they were violating those rights. Moreover, the Defendants acted reasonably in adopting the Policy, after consulting with the attorney

general's office, given the law in Idaho under Article IX, § 2 of the Idaho Constitution and the statutes governing public school curriculum.

The curriculum for public education in Idaho is prescribed by Idaho law. In Idaho, "[a]ll public charter schools are under the general supervision of the state board of education." Idaho Code § 33-5210(1) (2008); *see also* Article IX, § 2 and Idaho Code § 33-101(2008) and 33-5210(1) (2008). Thus, NCA is governed by the provisions of Idaho Code § 33-5200 *et seq*. and subject to the State's general education laws and educational standards as set by the State Board of Education and prescribed by law. The Commission, as NCA's authorized chartering entity, is responsible for ensuring that NCA meets the terms of the charter, complies with general education laws of the state, and operates in accordance with the state educational standards of thoroughness unless specifically directed otherwise. *See* Idaho Code § 33-5210(2) (2008).[17] "If the authorized chartering entity has reason to believe that the public charter school has [violated any provision of law], it shall provide the public charter school written notice of the defect and provide a reasonable opportunity to cure the defect." Idaho Code § 33-5209(2)(f) (2009 Supp.).

The State Board of Education has the authority and responsibility for setting the curriculum for public education in the state of Idaho with which all public schools in Idaho, including public charter schools such as NCA, must comply. *See* Idaho Code §§ 33-118, 33-

---

[17] Public charter school are exempt from rules governing school districts except for five categories of school district rules relating to: waiver of teacher certification, accreditation, student qualification, requirement of criminal history checks for all employees, and rules specifically pertaining to public charter schools. *See* Idaho Code § 33-5210(4) (2008).

118A.[18] In addition, Idaho Constitution, Article IX, § 6 is a provision of law to which NCA

is subject and must comply with and states:

> ### § 6. Religious test and teaching in school prohibited
> No religious test or qualification shall ever be required of any person as a condition of admission into any public educational institution of the state, either as teacher or student; and no teacher or student of any such institution shall ever be required to attend or participate in any religious service whatever. No sectarian or religious tenets or doctrines shall ever be taught in the public schools, nor shall any distinction or classification of pupils be made on account of race or color. No books, papers, tracts or documents of a political, sectarian or denominational character shall be used or introduced in any schools established under the provisions of this article, nor shall any teacher or any district receive any of the public school moneys in which the schools have not been taught in accordance with the provisions of this article.

These statutes have vested the Defendants with the authority and responsibility for setting

the curriculum for public education in Idaho. The actions of the Defendants' drawn into

question by the Plaintiffs in this case were premised upon these statutes. The Court finds the

---

[18]

**§ 33-118. Courses of study--Curricular materials.** The state board shall prescribe the minimum courses to be taught in all public elementary and secondary schools, and shall cause to be prepared and issued, such syllabi, study guides and other instructional aids as the board shall from time to time deem necessary. The board shall also determine how and under what rules curricular materials shall be adopted for the public schools. The board shall require all publishers of textbooks approved for use to furnish the department of education with electronic format for literary and nonliterary subjects when electronic formats become available for nonliterary subjects, in a standard format approved by the board, from which reproductions can be made for use by the blind.

**§ 33-118A. Curricular materials--Adoption procedures.** All curricular materials adoption committees appointed by the state board of education shall contain at least two (2) persons who are not public educators or school trustees. All meetings of curricular materials adoption committees shall be open to the public. Any member of the public may attend such meetings and file written or make oral objections to any curricular materials under consideration. A complete and cataloged library of all curricular materials adopted in the immediately preceding three (3) years and used in Idaho public schools, and all electronically available curricular materials used in Idaho public schools are to be maintained at the state department of education at all times and open to the public.

"Curricular materials" is defined as textbook and instructional media including software, audio/visual media and internet resources.

Defendants were reasonable in their belief that their conduct was lawful in light of the statutory authority and the legal opinion upon which they acted.

Plaintiffs also couch their argument as not one challenging the State's right to establish a curriculum but, instead challenging the Defendants' Policy of banning books in violation of their constitutional rights. (Docket No. 33, p. 19). Plaintiffs argue they are teaching the State curriculum and not espousing their own personal religious views; they desire only to use religious documents and texts as primary sources for objective teaching of history, literature, and other topics. (Docket No. 33, pp. 19-20). As such, Plaintiffs assert the Defendants violated their constitutional rights by censoring and banning particular books. (Docket No. 33, p. 20) ("protecting the rights of schools, teachers, students and parents to choose which materials to use, to learn from those materials, and to be free from government retaliation for the choice to use those materials...."). Plaintiffs again cite to *Evans-Marshall*. As discussed above, this case is different. This is not a book banning case. The materials sought to be used by the Plaintiffs have not been approved for use in the public school curriculum by the Commission or Board who have the responsibility to do so under the law in Idaho. Moreover, the Defendants' Policy upholds the First Amendment in that it prohibits any state sponsored establishing or promoting of religion.

At its August 14, 2009 meeting, the Commission relied on the opinion of the Attorney General when it stated that NCA's proposed use of the Bible and other religious text in its curriculum would violate Article IX, § 6 of the Idaho Constitution. (Docket No. 6, Ex. 2). The opinion noted that Article IX, § 6 "prohibits any use of sectarian or denominational texts in a public school classroom." (Docket No. 6, Ex. 2, p. 2). Thereafter, on February 11, 2010,

the Commission approved "Guidelines for Applying the Provisions of Idaho Constitution Article IX, § 6, Regarding Sectarian, Religious or Denominational Teaching or Materials." (Docket No. 35, Ex. B). These actions did not ban books that had previously been approved for use in the public school curriculum as the court confronted in *Evans-Marshall*. The texts Plaintiffs seek to use in the classroom are clearly in violation of Article IX, § 6 since they are sectarian. Therefore, the use of such materials is contrary to Article IX, § 6 of the Idaho Constitution and the Commission appropriately did not approve the use of such text in the public school curriculum.

As determined above, the Plaintiffs have not alleged a protected right or any clearly established law that was infringed upon by the actions of the Defendants. Moreover, the Defendants reasonably believed their conduct was lawful in that they were given the authority and responsibility for setting the curriculum for public schools in Idaho. As such the Defendants are entitled to the affirmative defense of qualified immunity and the Court will grant the Defendants' motion to dismiss the federal claims on this basis.[19]

II.    State Law Claims

The sixth cause of action alleged in the second amended complaint raises a state law claim for violation of Idaho Code §§ 33-5209 and 33-5210. Defendants argue because all of the Federal law claims should be dismissed, this Court should not exercise supplemental jurisdiction over the remaining state law claim. Plaintiffs dispute that the Federal law claims should be dismissed and contends that the Court should consider all of their claims as they

---

[19] Because the Court concludes that qualified immunity applies to all Defendants, the Court need not address the other arguments raised in the Defendants' motion to dismiss.

all raise "core constitutional issues." (DocketNo. 33, p. 15).

Supplemental jurisdiction exists where jurisdiction is exercised over a claim that is part of the same case or controversy as another claim over which the court has original jurisdiction. Black's Law Dictionary, p. 931, 9th Ed.; *see also* 28 U.S.C. § 1367. Section 1367(c) identifies four basis for declining supplemental jurisdiction where:

1.   the claim raises a novel or complex issue of State law,
2.   the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
3.   the district court has dismissed all claims over which it has original jurisdiction, or
4.   in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  Here, the first and third factors are the basis for this Court declining jurisdiction. As to the first factor, the parties dispute the clarity of the applicable Idaho law in this matter. Defendants argue the sixth claim asks this Court to resolve state law issues of first impression and interpret Article IX, § 6 of the Idaho Constitution. Such questions, the Defendants assert, should be resolved by the Idaho Supreme Court. Plaintiffs counter that the Court should not abstain from exercising jurisdiction over this claim because jurisdiction is appropriate over all of Plaintiffs' claims and the sixth cause of action does not raise issues upon which only the Idaho Supreme Court should speak. (DocketNo. 33, p. 15-17). Having reviewed the allegations, this Court finds the sixth claim raises issues of state law which are best addressed by the Idaho Supreme Court. More importantly, as to the third factor, the state law claim is the sole remaining claim and would be the only claim over which this Court would be exercising jurisdiction. To do so would be improper.

In their briefing on each of these motions, the parties disagree about the state law as

applied to the facts of this case. Such questions should be answered by the state court who is better suited to resolve the parties' dispute regarding the state law. What has given rise to Federal court jurisdiction are the Plaintiffs' claims based upon Federal law regarding the alleged constitutional violations by the Defendants' actions in relation to the NCA's school charter and curriculum. Those Federal law claims which gave rise to original jurisdiction have now been dismissed. Although there may exist grounds upon which jurisdiction could be exercised over the state law claims, having reviewed the briefing on the instant motions the Court concludes the state law matters are more appropriately decided by the state court. Accordingly, the state law claims are dismissed without prejudice.

III.    Conclusion

Based on the foregoing, the Court finds the Plaintiffs have failed to allege a protected right applicable to the facts and circumstances of this case. Though the Plaintiffs generally possess the constitutional rights they have asserted, those rights simply are not at issue here. The § 1983 claim draws into question the Defendants' actions in adopting the Policy that religious texts cannot be used in the public school curriculum. In this context, it is the Defendants who are the speakers and who have control over the content of the curriculum. By selecting the school curriculum for public education, the Defendants have not violated Plaintiffs' rights. Just the opposite, Defendants have acted according to the laws of the State of Idaho and the demands placed upon them by the Establishment Clause of the United States Constitution. The Plaintiffs remain free to speak and believe what they wish where they are the speaker and are not otherwise limited by law. Here, however, Plaintiffs simply are not the master of the content of the public school curriculum in Idaho. That responsibility falls

squarely upon the Defendants who have acted appropriately.

Even if the Court were to have determined the Plaintiffs had alleged a constitutional right that was violated, the Court would still grant qualified immunity to the Defendants because the right is not clearly established. Moreover, the Defendants acted reasonably in adopting the Policy based upon the duties imposed upon them under Idaho law to select public school curriculum. For these reasons, the Court finds the Defendants are each entitled to qualified immunity for the actions complained of here by the Plaintiffs. Finally, the Court also declines to exercise supplemental jurisdiction over the remaining state law claims. The state courts are in a better position to decide issues of first impression relating to state statutes and the state constitution.

## ORDER

THEREFORE IT IS HEREBY ORDERED that the Defendants' Motion to Dismiss (Docket No. 23) is **GRANTED**. All federal claims are **DISMISSED WITH PREJUDICE** and the state law claims presented in the sixth cause of action is **DISMISSED WITHOUT PREJUDICE**.

IT IS FURTHER ORDERED that the Motion to Waive (Docket No. 37) and Motion for Preliminary Injunction (Docket No. 26) are **MOOT**.

DATED:  **May 17, 2010**

Honorable Edward J. Lodge
U. S. District Judge